**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VLADIMIR VATYAN; AZATUHI
PETROSYAN,
　　　　　　　　　*Petitioners,*

　　　　　　　v.

MICHAEL B. MUKASEY,* Attorney
General,
　　　　　　　　　*Respondent.*

No. 04-72386

Agency Nos.
A75-725-875
A75-725-876

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 18, 2007—Pasadena, California

Filed November 27, 2007

Before: Raymond C. Fisher and Richard R. Clifton,
Circuit Judges, and Ricardo S. Martinez, District Judge.**

Opinion by Judge Fisher;
Dissent by Judge Clifton

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, sitting by designation.

## COUNSEL

Vitaly B. Sigal, Liberman & Sigal, Los Angeles, California, for the petitioners.

Susan L. Siegal, David W. Folts, Stephen Paskey and Molly L. DeBusschere (argued), U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

FISHER, Circuit Judge:

Vladimir Vatyan, an Armenian citizen, petitions for review of a Board of Immigration Appeals decision upholding an Immigration Judge's (IJ) denial of Vatyan's application for asylum, withholding of removal and relief under the United Nations Convention Against Torture. During his asylum hearing, Vatyan attempted to introduce documents purportedly from the Armenian government but the IJ refused to consider them, apparently because Vatyan had failed to obtain a government certification of their authenticity. We hold that an immigration petitioner may seek to authenticate a public document by any established means — including through the petitioner's own testimony if consistent with the Federal Rules of Evidence — and therefore the IJ erred in requiring official certification.

## I.

According to his asylum application, Vatyan was born in Azerbaijan but, amid the social unrest that accompanied the decline of the Soviet Union, was forcibly deported to Armenia. In Armenia, Vatyan faced further hardship. Like other ethnic Armenians who had lived in Azerbaijan, Vatyan was marginalized and had trouble finding work. His son was conscripted into the military and died under mysterious circumstances suggesting murder. In response to Vatyan's request for an investigation into his son's death, the military told him that his son had committed suicide. Vatyan claims that his objections to this and other injustices made him a target of the Armenian government, which allegedly imprisoned him for several months. After a human rights organization secured his release, Vatyan fled to the United States. When he arrived, he applied for asylum.

At his asylum hearing, Vatyan attempted to introduce several documents that he claimed bolstered his account of perse-

cution. The documents included: (1) a 1999 letter, purportedly from the Armenian Ministry of Internal Affairs and National Security, stating that Vatyan's son had committed suicide and that there would be no further investigation into his son's death; (2) a 1999 death certificate for his son; and (3) a 2000 letter, also purportedly from the Ministry of Internal Affairs, that "certif[ied]" Vatyan's imprisonment from January to April 2000.

The government objected to the documents as not properly certified under the authentication standards for foreign public documents set forth by 8 C.F.R. § 287.6(c), and thus inadmissible. The IJ, acknowledging our holding in *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam), that a foreign public document may be authenticated in an immigration proceeding either under § 287.6(c) or through "any recognized procedure," asked Vatyan's counsel whether the documents had "been authenticated in any other way?" When Vatyan's counsel responded that Vatyan would authenticate the documents through his own testimony, the IJ rejected this proposed authentication method and granted the government's motion to exclude the documents, stating that "they have not been properly authenticated either under [8 C.F.R. § 287.6] or in any other recognized manner under the Federal Rules of Civil Procedure as is outlined in *Khan v. INS*, 237 F.3d 1143." Later in the hearing, Vatyan's counsel — apparently undeterred by the IJ's ruling — attempted again to introduce the documents by eliciting Vatyan's testimony regarding the government stamps appearing on the documents, how he had obtained the documents and why he had not obtained certification for them. In response to these attempts, the IJ reiterated his ruling that the petitioner's own testimony regarding chain of custody could not authenticate the documents, and thus the documents were inadmissible. As the IJ saw it, "how the documents came into [Vatyan's] possession" and why Vatyan had not attempted to obtain certification were not "relevant" because the documents had "not been properly authenticated."

At the conclusion of the hearing, the IJ found that Vatyan lacked credibility. The IJ based his finding on, among other things, discrepancies between the dates of imprisonment Vatyan claimed on his asylum application and the dates he had given during his testimony at the hearing. The IJ also found discrepancies in Vatyan's story of how he secured his release from the prison. The IJ concluded that these and other inconsistencies "make[ ] me question whether [Vatyan] ever, in fact, was in the custody of the internal affairs prison . . . as he alleged." The IJ did not consider Vatyan's documentary evidence, which purported to certify the fact of his imprisonment. Based on the adverse credibility finding, the IJ denied relief. The Board of Immigration Appeals summarily affirmed and this timely petition for review followed.

## II.

We review an IJ's decision to exclude a document from evidence for lack of authentication for an abuse of discretion. *See United States v. Whitworth*, 856 F.2d 1268, 1283 (9th Cir. 1988). However, if the IJ's rejection of the document is based on a purely legal ground, we review de novo. *Khan*, 237 F.3d at 1144. Because we conclude that the IJ legally erred in assuming that the petitioner's own testimony could not be used to authenticate foreign public documents in an immigration proceeding, this case falls into the latter category.[1]

---

[1]Any characterization of our opinion as improperly overturning the IJ"s factual determination with our own judgment that Vatyan's testimony regarding the chain of custody of the relevant documents was credible and concluding that the IJ should have authenticated the documents on this basis is a misreading of both the factual record and our limited holding. The transcript clearly reveals that the IJ found the documents were not authenticated because he believed that Vatyan's testimony could not be a proper method of authentication, not because he disbelieved Vatyan's testimony about the documents. *See* AR 100-01 (stating that Vatyan's attempts to establish a chain of custody and to explain why he had not taken a document to a "United States Consulate," were not relevant because the document had, "in [f]act, [ ] not been properly authenticated").

**[1]** We recognized in *Khan* that "[d]ocuments may be authenticated in immigration proceedings through any recognized procedure, such as those required by INS regulations or by the Federal Rules of Civil Procedure." 237 F.3d at 1144 (citation and internal quotation marks omitted). Here, the IJ refused to consider Vatyan's testimony as relevant evidence that could support his attempt to authenticate the documents.

**[2]** The IJ's mistaken assumption is understandable, because established authentication methods for foreign public documents generally require a government certification. *See* 8 C.F.R. § 287.6(c) (requiring a "certificate . . . signed by a foreign officer so authorized by the signatory country"); Fed. R. Civ. P. 44(a)(2) (requiring "a final certification as to the genuineness of the signature and official position (i) of the [foreign official attesting to the document], or (ii) of any foreign official whose certificate of genuineness of signature and official position relates to the attestation or is in a chain of certificates of genuineness . . ."); Fed. R. Evid. 902(3) (similar).[2] Moreover, *Khan* neither explicitly addressed whether an IJ may consider the petitioner's own testimony in ruling on authentication nor expressly specified whether in permitting "any recognized procedure" of authentication we meant to allow only recognized procedures *for foreign public docu-*

---

Thus, although the IJ "heard" Vatyan's testimony regarding the documents, he never considered this testimony as relevant to the issue of authentication. To illustrate this critical distinction, under the IJ's mistaken understanding of our precedent, even a petitioner whom the IJ found credible would not be able to rely on his own testimony to authenticate a document. Our holding today is limited to correcting this misinterpretation of the law.

[2]Each of these mechanisms provides two avenues for authentication: either by production of an "official publication" of the document or by a "copy" accompanied by an official certification. *See, e.g.*, 8 C.F.R. § 287.6(c). Vatyan has not argued that any of the documents he provided were official publications, and we express no opinion on that question here.

ments or whether we were referring more broadly to recognized procedures for authentication of documents in general. We now clarify that an immigration petitioner may resort to any recognized procedure for authentication of documents in general, including the procedures permitted under Federal Rule of Evidence 901, and thus a petitioner's failure to obtain government certification of a foreign public document's authenticity is not necessarily a bar to admission of the document.

Requiring an asylum petitioner to obtain a certification from the very government he claims has persecuted him or has failed to protect him from persecution would in some cases create an insuperable barrier to admission of authentic documents. We have previously, in dicta, recognized this problem:

> The exclusion of documents because the Chinese authorities refused to authenticate them runs contrary to our longstanding principle excusing such authentication because '[p]ersecutors are hardly likely to provide their victims with [documentation] attesting to their acts of persecution.'

*Ding v. Ashcroft*, 387 F.3d 1131, 1135 n.4 (9th Cir. 2004) (quoting *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir. 1984)). Other circuits have more directly confronted this question, rejecting the apparent assumption made by the IJ in this case. For example, in *Liu v. Ashcroft*, 372 F.3d 529 (3d Cir. 2004), the Third Circuit endorsed the government's view that "asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor," and held as a result that the IJ had erred by viewing the procedures set forth in § 287.6 as the exclusive means of authentication for foreign public documents. *Id.* at 532-33. Other circuits are in accord. *See Yan v. Gonzales*, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006) ("Since [§ 287.6's] procedures generally require attestation of documents by the very

government the alien is seeking to escape, courts generally do not view the alien's failure to obtain authentication as requiring the *rejection* of a document.") (emphasis in original); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 404-05 (2d Cir. 2005) (similar); *see also Shtaro v. Gonzales*, 435 F.3d 711, 717 (7th Cir. 2006) ("[F]ailure to . . . authenticate [under § 287.6] does not amount to presumptive proof of falsity.").

Similarly, authentication by other common, but expensive, means — such as expert testimony — may be comparably difficult for an immigrant facing deportation to produce. Thus we have recognized that "an asylum applicant does not have an affirmative duty to have a document examiner authenticate every piece of documentary evidence." *Lin v. Gonzales*, 434 F.3d 1158, 1165 (9th Cir. 2006).[3]

**[3]** Both the Federal Rules of Civil Procedure and the Federal Rules of Evidence acknowledge that certification is not the exclusive means of authenticating a foreign public document. Federal Rule of Civil Procedure 44(a)(2) provides that "[i]f reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the [foreign official record], the court may, for good cause shown . . . admit an attested copy without final certification." This exception exists because "it is recognized that in some situations it may be difficult or even impossible to satisfy the basic require-

---

[3]In *Lin*, we applied our rule that "[m]ere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute sufficient foundation for an adverse credibility finding." 434 F.3d at 1164 (quoting *Wang v. INS*, 352 F.3d 1250, 1254 (9th Cir. 2003)) (alteration in original). That rule does not apply here because the IJ did not use Vatyan's failure to authenticate the documents to support the adverse credibility finding, but instead simply excluded the documents from evidence and refused to consider them at all. *Cf. Lin*, 434 F.3d at 1160 (stating that in that case "the IJ denied [Lin's] asylum application not because she thought Lin lacked credibility or that Lin told an implausible story," but instead because the IJ "was suspicious about the official documents submitted by Lin").

ments of the rule" and is intended to apply "only when it is shown that the party has been unable to satisfy the basic requirements of the amended rule despite his reasonable efforts." Fed. R. Civ. P. 44, 1966 advisory committee's note. Similarly, if the party offering the evidence is unable to self-authenticate it pursuant to Federal Rule of Evidence Rule 902, the party is not precluded from attempting to authenticate it under the general provision of Rule 901 that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See United States v. Childs*, 5 F.3d 1328, 1336 (9th Cir. 1993) (holding that district court did not abuse its discretion by permitting Canadian public documents to be authenticated under Rule 901 by testimony of an Alberta DMV employee).

**[4]** The IJ therefore erred insofar as he required Vatyan to produce some form of official certification as a mandatory pre-requisite to authenticating his proffered documents. Rule 901 of the Federal Rules of Evidence "allows the district court to admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004) (internal quotation marks omitted). Thus, for example, the First Circuit in *Yongo v. INS*, 355 F.3d 27 (1st Cir. 2004), held that German immigration records could be authenticated through an INS officer's testimony regarding their source and their appearance. *Id.* at 31. This is consistent with Rule 901, which lists as an example of valid authentication devices the "[t]estimony of [a] witness with knowledge." Fed. R. Evid. 901(b)(1).

**[5]** Here, Vatyan provided evidence that arguably could have supported authentication. A longtime resident of Armenia, Vatyan testified that he recognized the official stamps on the documents as stamps of the Armenian government. Moreover, he attempted to establish a chain of custody by explain-

ing how the documents came into his possession. The dissent notes that "Vatyan has not identified anything further that he might have testified to." Diss. at 15166. Because we address the IJ's interpretation of the law, however, what is critical is not whether the petitioner could provide additional evidence, but rather for what purpose the IJ considered the evidence that is already in the record. Vatyan's testimony was relevant evidence of whether the proffered documents were authentic, and the IJ could and should have weighed that testimony rather than relying solely on Vatyan's failure to produce officially certified copies.

**[6]** Of course, simply because an IJ *may* consider a petitioner's testimony in support of authentication does not mean that the IJ *must* accept the documents into evidence or deem their contents to be true. Our ruling today does not alter the degree of deference this circuit will accord an IJ's factual findings**.** Immigration judges retain broad discretion to accept a document as authentic or not based on the particular factual showing presented.[4] We hold as a matter of law only that the IJ must consider Vatyan's testimony as evidence that is relevant to the issue of the documents' authenticity. After listening to the testimony for this purpose, the IJ can assess the

---

[4]For example, although we have identified the unique burdens facing asylum petitioners attempting to authenticate foreign public documents, an IJ need not assume that such barriers exist in all cases and may weigh the petitioner's failure to authenticate the document through more established means. Nor is an IJ precluded from applying his or her own "judicial experience" or pointing out "obvious warning signs of forgery" in considering whether a document should be admitted into evidence. *See Lin*, 434 F.3d at 1164 (citing *Bropleh v. Gonzales*, 428 F.3d 772, 777 (8th Cir. 2005)). "[A]n IJ need not accept all documents as authentic nor credit documentary submissions without careful scrutiny" so long as the rejection is "premised on more than a guess or surmise." *Id.* at 1160. Finally, even if an IJ concludes that the petitioner has presented sufficient prima facie evidence of a document's authenticity to admit it into evidence, the IJ as the trier of fact retains discretion to weigh "the evidence's credibility and probative force." *Whitworth*, 856 F.2d at 1283 (internal quotation marks omitted).

credibility of that testimony and determine whether the balance of the evidence is sufficiently compelling to satisfy him that the documents are what Vatyan claims them to be.[5]

### III.

[7] The IJ's error was not harmless. Notably, the IJ's credibility determination was the result of, rather than the basis of, his finding that the documents were not authenticated.[6] Specifically, the IJ's findings were premised in part on his doubts regarding "whether [Vatyan], in fact, was in the custody of the internal affairs prison . . . as he alleged." This statement was in direct conflict with one of the documents that purported to certify that Vatyan had in fact been imprisoned. Had the IJ appropriately considered Vatyan's testimony and found it sufficient to authenticate the relevant documents, he might have arrived at the opposite conclusion regarding Vatyan's credibility and the merits of his asylum claim. As a result, "the erroneous aspects of the IJ's reasoning are not tangential to the findings [he] made." *Cao He Lin*, 428 F.3d at 406; *see also Liu*, 372 F.3d at 534 (granting petition for review where the IJ made a "legal determination" that "fundamentally upsets the balancing of facts and evidence upon which [the] agency's decision is based").

In sum, we hold that a petitioner's own testimony is a proper method that may be used to authenticate foreign public documents. Because the IJ rejected the documents based on

---

[5]Part of this reasoning will rely on the IJ's assessment of the petitioner's credibility. But to find the petitioner not credible simply because he does not produce an certified copy is not enough. Otherwise, the reasoning would be circular, finding a petitioner not sufficiently credible to authenticate a document because he does not have an authenticated document to support his testimony. As explained in Section III, below, the dissent's reading of the IJ's credibility/authenticity findings falls into this circularity trap.

[6]Significantly, the IJ initially determined that the documents were not properly authenticated even before he had heard Vatyan's testimony.

the mistaken belief that this method of authentication was unavailable, we grant the petition for review, vacate the BIA's order and remand for further proceedings consistent with this opinion. We express no view about the ultimate admissibility or probity of the documents.

**PETITION GRANTED; REMANDED.**

---

CLIFTON, Circuit Judge, dissenting:

The case turns on the Immigration Judge's decision not to admit into evidence certain exhibits alleged by petitioner Vladimir Vatyan to be documents issued by the Armenian government. The IJ concluded that the documents had not been authenticated. Even though the IJ was assigned the responsibility to make that evidentiary ruling, identified the pertinent controlling precedent by name, heard what Vatyan had to say about the documents, and explicitly made a determination supported by substantial evidence that Vatyan was not credible, we grant the petition for review and send the case back for another round because the majority thinks that the IJ might have disregarded the possibility that the documents could have been authenticated by Vatyan's own testimony. The majority opinion ignores reality, both in faulting the evidentiary ruling made by the IJ and in concluding that the ruling could have made any difference in the outcome of the immigration court proceeding. I respectfully dissent.

1.   The evidentiary ruling

The IJ did not abuse his discretion or make a legal error in deciding that the documents had not been authenticated. The IJ knew what Vatyan claimed they were. The IJ reviewed the documents and marked them for identification. He also heard what Vatyan had to say about the documents. Although the majority opinion suggests otherwise, Vatyan was not cut off

when he tried to testify about the documents — his testimony on that subject spanned ten pages of transcript. Nor did the IJ exclude testimony about how Vatyan obtained the documents. To the contrary, the IJ explicitly said, "I'd like to know how they came into his possession." In his argument on appeal, Vatyan has not identified anything further that he might have testified to. There is simply no reason to conclude that anything is missing from the existing record, let alone that Vatyan had a better case to make than he had already made.

Moreover, there is nothing in the record suggesting that the IJ took a narrow view of how documents could be authenticated. It is true, as the majority opinion describes, at 15157, that the government appeared to take the position during the immigration court hearing that authentication was limited to certification under 8 C.F.R. § 287.6(c). But the IJ got it right, explicitly citing by name our court's decision in *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam), for the proposition that a foreign public document may be authenticated in an immigration proceeding either under § 287.6(c) or, in the words used by the IJ during the hearing, in "any other recognized manner."

The majority opinion identifies some uncertainty in our caselaw as to whether "any other recognized manner" of authentication might include Rule 901of the Federal Rules of Evidence. Nothing in the IJ's citation to *Khan* suggests that he read his authority to admit evidence narrowly, however. Nothing in the record of this case suggests that the IJ misunderstood his ability to admit the disputed documents into evidence if he believed they were authentic.

The premise of the majority — that the IJ must have rejected the documents because they were not certified — cannot be squared with the IJ's citation of *Kahn* and his explicit recognition that exhibits could be authenticated in "any other recognized manner." The problem with Vatyan's effort to authenticate the documents with his own testimony

was not that his testimony was insufficient under the law. It was that the IJ did not believe Vatyan's testimony. Vatyan failed to prove authenticity as a matter of fact.

The majority opinion reads too much into the IJ's later statements, well after the authentication discussion had concluded, about the *relevance* of Vatyan's testimony about the documents. The majority takes these statements to mean that the IJ had refused to consider whether this testimony could help authenticate Vatyan's documents. The record fails to support such a reading. When the IJ first considered the authentication issue, he asked Vatyan's lawyer how he planned to authenticate the documents. Vatyan's lawyer said that Vatyan would testify on their behalf. Soon thereafter, the IJ concluded that Vatyan's documents had not been properly authenticated. It is plain that the IJ at this point had weighed and rejected the idea that Vatyan's testimony would be factually sufficient for authentication. That was hardly a surprise, given the IJ's doubts about Vatyan's credibility, which culminated in the adverse credibility determination. The statements made by the IJ during Vatyan's testimony merely indicate that the IJ did not need to hear further testimony from Vatyan on the matter, because he had already heard enough, and additional testimony by Vatyan would not persuade him. The IJ by that time had moved beyond the question of authentication.

The IJ did not abuse his discretion or make a legal error in deciding that the documents had not been authenticated.

2.   The lack of prejudice

Vatyan was not prejudiced by the evidentiary error which the majority claims to have found. This was a bench trial. The IJ served as both the gatekeeper for evidence and the ultimate finder of fact. The rules of evidence are not ordinarily applied as stringently in bench trials or in administrative proceedings as in jury trials. *See* 1 *Weinstein's Federal Evidence, 2d* § 102.06, at 102-13 (2006); 2 *Admin. L. & Prac.* § 5.52 (2d

ed. 2007) ("[T]he rules of evidence are designed to protect unsophisticated members of a jury and hence are not appropriate for hearings in which the trier of fact is sophisticated and usually expert in the area of the factual controversy."). Appellate review of evidentiary rulings in district court bench trials, where the same judge is making both the evidentiary rulings and the ultimate findings of fact, is ordinarily highly deferential. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 (9th Cir. 2004).

Even in a criminal prosecution before a jury, where the most care is taken to apply the rules of evidence correctly, a district court's evidentiary ruling during trial is reviewed for abuse of discretion. *See United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004) (noting "wide discretion"). An evidentiary ruling even in such a criminal jury trial will be reversed for abuse of discretion only if such error "more likely than not affected the verdict." *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). The standard in this case, in which we are reviewing the decision of an administrative agency resulting from a bench trial, is surely at least as high.

There is simply no serious possibility that the IJ's purported failure to consider Vatyan's testimony with regard to the authenticity of the disputed documents could have affected the IJ's ultimate conclusion here, let alone done so "more likely than not." The majority goes astray when it disregards the fact that the IJ who ruled on the authenticity of the documents was the same person who explicitly and unequivocally found that Vatyan was not a credible witness. It defies logic to think that either Vatyan's testimony about the origin of these documents or the admission of the documents themselves would miraculously cause the IJ to believe the rest of Vatyan's testimony.

Take, for example, the letter purportedly from the Ministry of Internal Affairs which "certified" that Vatyan had been

imprisoned, as Vatyan testified. The IJ did not believe Vatyan's testimony about that imprisonment. The letter on its face appeared to corroborate Vatyan's story, but Vatyan provided nothing to authenticate the letter beyond his own testimony. If the IJ had believed Vatyan's testimony about the imprisonment, then he might have believed the document to have been authentic. But he didn't. The IJ heard that testimony and looked at the document. If the document's appearance and Vatyan's testimony about the document were persuasive, the IJ might have been led to conclude that Vatyan had been imprisoned as he testified and should be found credible. But that didn't happen, either. Despite seeing the document and hearing the testimony, he explicitly found that Vatyan "was not a credible witness."

There is simply no serious possibility that the IJ's purported failure to consider Vatyan's testimony with regard to the authenticity of the disputed foreign documents affected the ultimate outcome of the proceeding. Requiring the IJ to "consider" what Vatyan had to say about these documents does not change the reality that he already heard what Vatyan had to say and was not persuaded.

3.   Conclusion

I am confident that if we were reviewing a similar evidentiary decision made by a federal district judge, we would not reach this result. We would affirm a similar rejection of documents by a district court based on lack of authentication, both because we would accept the district judge's evidentiary ruling, and because we understand that errors in evidentiary rulings should be disregarded unless they actually affect the outcome. We should reach the same result here. Our review of factual findings by an IJ is, after all, supposed to be even more deferential than our review of factual findings by a district court. A factual finding by a district court is subject to being overturned if we conclude it to be "clearly erroneous," but a finding of fact by an IJ, including findings that a peti-

tioner is not credible or a certain document is not authentic, must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1251(b)(4)(B). Our court's recurring tendency to hold IJs to more exacting standards is not justified under the statute.

Remanding this matter is an empty and pointless exercise, and it is not cost free. Not only will Vatyan's case continue to take time and resources, the precedent established by this decision will make it even more difficult for immigration judges to work through their heavy caseloads. The message to IJs from this decision is to admit all proffered evidence and not to try to focus the presentation of evidence on subjects that could actually affect the substantive outcome of the case. We wouldn't say that to a district judge. We shouldn't say it to an immigration judge.

The petition for review should be denied.