FILED
United States Court of Appeals
Tenth Circuit

**May 27, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NAK CHEN, a/k/a Na Chen, a/k/a
Sweegek Lim,

       Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

       Respondent.

No. 09-9535
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TACHA**, Circuit Judges.

---

Nak Chen petitions for review of an order of the Board of Immigration

Appeals (BIA or Board) that denied her untimely motion to reopen removal

proceedings. We grant the petition for review and remand for additional

proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Ms. Chen, a native and citizen of the People's Republic of China, entered the United States in 2002 and applied for asylum on July 8, 2002, based on the Chinese government's coercive birth control policy. She asserted that after her marriage, she gave birth to a son in 1992, but that the government forced her to abort subsequent pregnancies in 1997 and 1998. She also asserted that the government fined her family for violating the family planning policy and threatened her with forced sterilization. She alleged that her husband fled to the United States in 1999, and she followed in 2002.

An immigration judge (IJ) denied Ms. Chen any relief on September 29, 2004, due to her unpersuasive testimony and the lack of documentation to prove that she had a child or had paid a fine for violating China's birth control policy. In her administrative appeal, Ms. Chen presented her son's birth certificate to the BIA, but the BIA rejected it as untimely and, on June 1, 2005, affirmed the order of removal.

On October 31, 2008—over three years later—Ms. Chen filed a motion to reopen with the BIA. She claimed that conditions changed in China before the summer Olympic Games in Beijing in August 2008. She asserted that the Chinese government had completely banned the practice of Falun Gong[1] in July 1999, but

---

[1]    According to the Country Profile on China prepared by the U.S.

(continued...)

that she had begun practicing Falun Gong in 2007 here in the United States to remedy the adverse physical and emotional effects of having undergone two abortions and to allay her fear of being returned to China. She also stated that she had participated in demonstrations criticizing the Chinese government's suppression of Falun Gong, including protests before the opening of the 2008 Olympic Games. She asserted that she ran into some people from her hometown at a Falun Gong demonstration in front of the White House in July 2008, and that they informed on her to the town government upon their return to China. She said that the Chinese government urged villagers to inform on people opposing the Chinese government in foreign countries, and that officials from her hometown went to her mother-in-law's home on July 31, 2008, and gave her a notice to tell Ms. Chen to stop practicing Falun Gong and return to China to accept punishment. Ms. Chen offered into evidence (among other things) her affidavit attesting to these events, her husband's affidavit, her mother-in-law's affidavit

[1](...continued)
Department of State,

> Falun Gong blends aspects of Taoism, Buddhism, and the meditation techniques and physical exercises of qigong (a traditional Chinese exercise discipline) with the teachings of Falun Gong founder Li Hongzhi. Many practitioners became interested in Falun Gong because of its purported health benefits. Despite the mystical nature of Li's teachings, Falun Gong has no clergy or places of worship, and does not represent itself as a religion.

Admin. R. at 80. The Chinese government deems it a cult. *Id.*

(and its English translation) attesting to the threats made by Chinese government officials due to Ms. Chen's Falun Gong activities in the United States, and a document purporting to be a Chinese village committee notice issued by government officials to her mother-in-law (along with its English translation).

The BIA denied Ms. Chen's motion to reopen on June 11, 2009, reasoning that it was not filed within ninety days of the final order of removal, as required by 8 C.F.R. § 1003.2(c)(2), and that she had not shown changed country conditions arising in China to meet an exception to the bar against an untimely motion to reopen in 8 C.F.R. § 1003.2(c)(3)(ii). Admin. R. at 3-4. The BIA held that Ms. Chen's evidence showed a change in her personal circumstances, not a change arising in China, and that she had failed to demonstrate that her removal proceedings should be reopened. *Id.* at 4. Ms. Chen appeals.

## II.

This appeal is governed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Since the passage of IIRIRA, the Supreme Court has stated that a motion to reopen is an "important safeguard" designed "to ensure a proper and lawful disposition." *Dada v. Mukasey*, 128 S. Ct. 2307, 2318 (2008).

We have previously held that we have jurisdiction under IIRIRA to review the BIA's discretionary denial of a motion to reopen removal proceedings. *See*

*Infanzon v. Ashcroft*, 386 F.3d 1359, 1360-62 (10th Cir. 2004). The Supreme

Court recently confirmed our conclusion on this point in *Kucana v. Holder*,

130 S. Ct. 827 (2010). The Court reasoned that "[w]hile Congress pared back

judicial review in IIRIRA, it did not delegate to the Executive authority to do so."

*Id.* at 840. The Court concluded that because "[t]he Board's discretionary

authority to act on a motion to reopen . . . is specified not in a statute, but only in

the Attorney General's regulation," *id.* at 835 (quotation omitted), the

jurisdiction-stripping provision in 8 U.S.C. "§ 1252(a)(2)(B)(ii) does not

proscribe judicial review of denials of motions to reopen[,]" *id.* at 838.

"We review the BIA's decision on a motion to reopen only for an abuse of

discretion. The BIA abuses its discretion when its decision provides no rational

explanation, inexplicably departs from established policies, is devoid of any

reasoning, or contains only summary or conclusory statements." *Infanzon*,

386 F.3d at 1362 (quotation and alterations omitted). "We review the BIA's

findings on questions of law de novo." *Nguyen v. INS*, 53 F.3d 310, 311

(10th Cir. 1995).

Ms. Chen argues that the BIA abused its discretion in denying her motion

to reopen because it erred as a matter of law in determining that she failed to

show changed country conditions and because substantial evidence does not

support its factual finding. We have reviewed the BIA's order and the record on

appeal and conclude that the BIA abused its discretion because its rationale is not clear and its statements are not a correct interpretation of the law.

> Under 8 U.S.C. § 1229a(c)(7)(C)(ii)[,] a motion to reopen to apply for asylum based on proof of changed country conditions is not barred by the time restriction on filing motions to reopen if "such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."

*Wei v. Mukasey*, 545 F.3d 1248, 1254 (10th Cir. 2008) (quoting 8 U.S.C. § 1229a(c)(7)(C)(ii)).  The BIA rejected Ms. Chen's evidence of changed country conditions arising in China, although its reasons for doing so are not clear.  The BIA first noted that Ms. Chen did not support her motion to reopen with "an application for asylum setting forth [her] new claims."  Admin. R. at 4.  The BIA did not indicate whether this deficiency, by itself, was fatal to her motion to reopen.  *See id.*  It evidently thought not, considering that it proceeded to give other reasons for denying the motion.  *See id.*

The BIA then stated that the document purporting to be a village notice did "not contain authenticating information[.]"  *Id.*  In support, the BIA first cited 8 C.F.R. § 1287.6, although it did not reference a specific subsection of the regulation or explain what it thought was missing from Ms. Chen's exhibit.  We observe that § 1287.6 provides for the authentication of certain foreign official records by both the home country and the United States Foreign Service, *id.* § 1287.6(b), and the authentication of other foreign public documents by the home country alone, *id.* § 1287.6(c).  The BIA also provided a summary citation

-6-

to its own prior holding that an alien may "successfully reopen" her asylum case based on "genuine, authentic, and objectively reasonable evidence[.]" *In re S-Y-G*, 24 I. & N. Dec. 247, 251 (BIA 2007) (footnote omitted).  We note, however, that in *S-Y-G* the BIA *assumed* the authenticity of the petitioner's evidence.  *Id.* at 251 & n.2.  That decision says nothing about the proper means of authenticating a foreign document, and it does not mention either § 1287.6 or its regulatory twin, 8 C.F.R. § 287.6.  *See generally S-Y-G*, 24 I. & N. Dec. 247.  The BIA then rejected Ms. Chen's argument "that the regulatory authentication requirement should not be applied to her evidence," and said it would decline to follow an unidentified Second Circuit case upon which Ms. Chen relied because "her case arises in the jurisdiction of the Tenth Circuit[.]"  Admin. R. at 4.

We have previously noted that because the regulatory "procedures generally require attestation of documents by the very government the alien is seeking to escape, courts generally do not view the alien's failure to obtain authentication as requiring the *rejection* of a document."  *Yan v. Gonzales*, 438 F.3d 1249, 1256 n.7 (10th Cir. 2006).  In this case, the BIA did not identify whether it gave Ms. Chen's village notice little weight or no weight at all, *see* Admin. R. at 4, so its decision is not susceptible to meaningful appellate review.  And because we are remanding the case, we will also clarify the legal standard to be applied on remand.

In *Yan*, we cited the Second Circuit case upon which Ms. Chen now relies, *Cao He Lin v. United States Department of Justice*, 428 F.3d 391, 404 (2d Cir. 2005). In that case, the Second Circuit held that § 287.6 "'is not the exclusive means of authenticating records before an immigration judge[,]' in part, because 'asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor.'" *Cao He Lin*, 428 F.3d at 404 (quoting *Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532 (3d Cir. 2004)). The Second Circuit also pointed out that the BIA apparently agrees, because the BIA previously granted an asylum request in the face of an argument from the former Immigration and Naturalization Service that the petitioner's documents were not authenticated. *Id.* at 405 (citing *In re C-Y-Z*, 21 I. & N. Dec. 915, 918, 920 (BIA 1997), *overruled on other ground by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007)).

The circuit courts to have considered the question have held that the agency's regulation (whether § 287.6 or § 1287.6) does not establish exclusive procedures for authenticating foreign documents; rather, foreign documents may be authenticated through any recognized procedure, including the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any procedure that comports with common law rules of evidence, including affidavits or testimony. *See, e.g.*, *Shunfu Li v. Mukasey*, 529 F.3d 141, 149-50 (2d Cir. 2008); *Vatyan v. Mukasey*, 508 F.3d 1179, 1182-84 (9th Cir. 2007); *Gui Cun Liu*, 372 F.3d at 532; *Yongo v.*

*INS*, 355 F.3d 27, 30-31 (1st Cir. 2004); *Chen Lin-Jian v. Gonzales*, 489 F.3d 182, 192 (4th Cir. 2007); *Georgis v. Ashcroft*, 328 F.3d 962, 969 (7th Cir. 2003). We agree with our sister circuits that the BIA must allow an alien to authenticate a foreign document by any of these means, not just its own regulation. Ms. Chen provided affidavits explaining the circumstances surrounding the issuance of the village notice she offered as evidence, *see* Admin. R. at 45, 61, and we therefore will remand this case for the BIA to reconsider Ms. Chen's evidence.

The BIA further stated that "[t]he information in the [U.S. State Department's] Country Profile regarding the treatment of Chinese citizens who practice Falun Gong in the United States reflects detention and re-education." *Id.* at 4 (citing Motion Ex. 6, at 9-11). The BIA utterly failed, however, to explain how this remark relates to Ms. Chen's arguments or the legal standard for reopening. The cited pages of the Country Profile confirm that Falun Gong is banned in China as a cult, that "[t]he government has continued to wage a severe campaign against Falun Gong," and that "thousands of individuals may still be undergoing criminal, administrative, and extra-judicial punishments for engaging in Falun Gong practices, admitting belief in Falun Gong, or simply refusing to recant their beliefs or condemn the movement." *Id.* at 80. The report also states that the government's punishment of Falun Gong practitioners includes confinement in "reeducation-through-labor camps and high-security psychiatric hospitals for the criminally insane[,]" and that "Falun Gong practitioners

comprised 66 percent of victims of alleged torture while in government custody."

*Id.* It is not apparent from the BIA's decision why this evidence was rejected.

For the reasons set out above, we conclude that the BIA's denial of the motion to reopen is based on legal error and is inadequately explained. The petition for review is GRANTED, and the case is remanded for additional proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge