NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 29 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DEISY YAQUELIN ORDONEZ-GODOY and CALEB JOEL SAUCEDA-ORDONEZ, <br><br> Petitioners, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, <br><br> Respondent. | No.   17-71840 <br><br> Agency Nos.   A206-843-750 <br>                   A206-843-751 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 11, 2018
Pasadena, California

Before:  ROGERS,** BYBEE, and WATFORD, Circuit Judges.

Deisy Ordonez-Godoy, a native and citizen of Honduras, petitions for review

of the BIA's decision upholding the IJ's denial of her applications for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        **        The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Ordonez-Godoy also claims that the IJ and BIA denied her due process. Caleb Joel Sauceda-Ordonez, Ordonez-Godoy's minor son, is a derivative beneficiary of her claims. We have jurisdiction pursuant to 8 U.S.C. § 1252.

Substantial evidence supports the BIA's denial of Ordonez-Godoy's application for asylum. "In order to reverse the BIA, we must determine 'that the evidence not only *supports* [a contrary] conclusion, but *compels* it—and also compels the further conclusion' that the petitioner meets the requisite standard for obtaining relief," *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014) (alteration in original) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)), but here the record does not compel reversal. Substantial evidence supports the BIA's conclusion that Ordonez-Godoy did not suffer past persecution. Ordonez-Godoy was never physically harmed or directly threatened by the Figueroas. Ordonez-Godoy credibly testified to threats against her husband by the Figueroas, but during her only direct interaction with the Figueroas—when an armed group of gang members came to her home shortly after her husband fled Honduras—a gang member told her he was friends with her father and expressed no interest in harming her. Ordonez-Godoy remained in the country for nearly two years following the incident without harm.

Absent a showing of past persecution, Ordonez-Godoy cannot benefit from a presumption of a fear of future persecution, and substantial evidence supports the

BIA's determination that Ordonez-Godoy did not establish a well-founded fear of future persecution on account of a protected ground. First, substantial evidence supports the BIA's conclusion that Ordonez-Godoy is unlikely to be persecuted based on her relationship with her husband's politically active family. During Ordonez-Godoy's single direct encounter with the Figueroas they expressed no desire to harm her even though they were aware that she was living with her husband's family; she lived in her husband's family's home for nearly two more years without incident; and there is no evidence that anyone in Ordonez-Godoy's hometown has been specifically targeted because of his or her relationship with the Sauceda-Velasquez family.

Substantial evidence also supports the BIA's conclusion that Ordonez-Godoy did not establish a well-founded fear of future persecution based on her political opinion. It is true that the Figueroas have targeted her husband's uncle and cousin, who were political candidates for mayor, as well as her husband's aunt and other uncle, who served as campaign managers. But the record here does not compel the finding that the Figueroas imputed these political beliefs to Ordonez-Godoy. Again, Ordonez-Godoy has had a single interaction with the Figueroas and they expressed no interest in harming her, despite knowing that she lived with her husband's politically active family. She lived with her husband's family without incident throughout the mayoral campaign, and she lived in Honduras without harm for more

3                                    17-71840

than a year after the assassination of her husband's uncle. Her husband's parents have continued to live in Honduras since that time without harm, despite the inclusion of her father-in-law on the Figueroas' hit list.

Further, because Ordonez-Godoy failed to establish eligibility for asylum, she necessarily failed to satisfy the higher standard for withholding of removal. *See Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004).

We do not have jurisdiction to consider the merits of Ordonez-Godoy's CAT claim. Because Ordonez-Godoy did not appeal the IJ's adverse CAT decision to the BIA, she failed to exhaust her administrative remedies with respect to her CAT claim. *See Alvarado v. Holder*, 759 F.3d 1121, 1127 n.5 (9th Cir. 2014).

Ordonez-Godoy was not denied due process. The transcript of Ordonez-Godoy's hearing does not support her assertion that the IJ demonstrated actual bias or prejudgment. The IJ was within her authority to question Ordonez-Godoy during the hearing. 8 U.S.C. § 1229a(b)(1); *see Halaim v. INS*, 358 F.3d 1128, 1137 (9th Cir. 2004). Moreover, while the IJ at times was terse with Ordonez-Godoy and her counsel, "a mere showing that the IJ was unfriendly, confrontational, or acted in an adversarial manner is not enough" to demonstrate that a petitioner has been denied due process. *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016). Ordonez-Godoy also claims that the IJ denied her due process by denying her motion to consolidate her case with her husband's. But the issue was not exhausted before the agency because

17-71840

it was not substantively raised before the BIA, and the BIA did not consider the issue when it adopted the immigration judge's October 18, 2016, decision. Thus, the issue is not properly before us. *See Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam).

Finally, the BIA's evidentiary rulings did not deny Ordonez-Godoy due process. Ordonez-Godoy complains that the IJ afforded diminished weight to a report about conditions in Honduras. But IJs retain broad discretion to "weigh the evidence's credibility and probative force." *Vatyan v. Mukasey*, 508 F.3d 1179, 1185 n.4 (9th Cir. 2007). Here the IJ's decision was not an abuse of discretion. The IJ observed that the report was incomplete and was not accompanied by an appropriate English translation, even though foreign language documents offered in a proceeding must be accompanied by an English language translation, *see* 8 C.F.R. § 1003.33. Ordonez-Godoy also complains that the BIA failed to consider new evidence she provided on appeal. But 8 C.F.R. § 1003.1(d)(3)(iv) instructs the BIA to "not engage in factfinding in the course of deciding appeals." Moreover, reversal on due process grounds requires that the proceeding had been "so fundamentally unfair that the alien was prevented from reasonably presenting [her] case." *Platero-Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir. 1986). That standard was not met here, and Ordonez-Godoy did not ask the BIA to reopen her case.

**PETITION FOR REVIEW DENIED IN PART AND DISMISSED IN PART**

*Ordonez-Godoy v. Sessions*, No. 17-71840

WATFORD, Circuit Judge, dissenting:

I would grant the petition for review. Even if we assume that Deisy Ordonez-Godoy did not suffer past persecution, I think the evidence compels the conclusion that she has a well-founded fear of future persecution if she is forced to return to her native Honduras.

The source of Ordonez-Godoy's well-founded fear is a family organization, known as the Figueroas, that commits acts of violence and intimidation on behalf of the leading national political party. Both Ordonez-Godoy's husband and her husband's family have been the targets of an ongoing campaign of violence waged by the Figueroas. It started in 2012, when Ordonez-Godoy's husband helped save the life of a man who had been shot by the Figueroas. After that, the Figueroas tried to kill Ordonez-Godoy's husband. They called Ordonez-Godoy's father-in-law several times, threatening his son's life. They shot up a car that looked like the one Ordonez-Godoy's family drove, on the same road that her husband, father-in-law, and brothers-in-law took to work each morning. All of the occupants in the car were wounded or killed. Shortly after the attack, Ordonez-Godoy's father-in-law received another threatening call from the Figueroas. Because of the continued threats to his life, Ordonez-Godoy's husband fled to the United States in April 2012.

Ordonez-Godoy remained in Honduras and continued to live in the home of her husband's family, in a town where everyone treated Ordonez-Godoy as an extended member of the family. Her husband's family members were politically active in opposition to the ruling party, and that caused them to become targets of violence at the hands of the Figueroas. In 2013, the uncle of Ordonez-Godoy's husband ran for mayor of the town in which they lived. Ordonez-Godoy, her husband's aunt, and another of her husband's uncles all helped with the campaign. Both the aunt and uncle were assassinated because of their political affiliation with the uncle's campaign. The uncle running for office was subsequently assassinated as well. The uncle's daughter took over his mayoral campaign and she, too, was the victim of an attempted assassination. In June 2014, someone connected to the Figueroas told Ordonez-Godoy that her husband and father-in-law were next on the organization's hit list. That was the last straw for Ordonez-Godoy. She fled to the United States, where she now lives with her husband and their two children, one of whom is an American citizen.

This evidence establishes that Ordonez-Godoy faces at least a ten percent chance of being persecuted at the hands of the Figueroas based on her political opinions and her affiliation with her husband's politically active family. Ordonez-Godoy is no differently situated than her husband's aunt and uncle: They all

played similar roles in the other uncle's mayoral campaign, and the aunt and uncle were murdered on account of those very political activities. What's more, the threat Ordonez-Godoy faces remains real: After Ordonez-Godoy fled to the United States, her mother-in-law decided to run for mayor of the same town in Honduras, and she began receiving anonymous calls (presumably from the Figueroas) threatening that her entire family would be murdered if she did not drop out of the race. I would therefore grant the petition for review and hold that Ordonez-Godoy is eligible for asylum.