**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| ASIM SARWAR,<br><br>                  Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>                  Respondent. | No.   18-71479<br><br>Agency No. A208-616-883<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 10, 2022[**]
Submission Vacated September 20, 2022
Resubmitted January 31, 2023
Portland, Oregon

Before: TALLMAN and CHRISTEN, Circuit Judges, and BLOCK,[***] District Judge.
Dissent by Judge BLOCK.

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]       The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]       The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

Asim Sarwar, a native and citizen of Pakistan, petitions for review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and deny Sarwar's petition.

1. We reject Sarwar's argument that the BIA lacked jurisdiction due to a defective notice to appear (NTA). *See United States v. Bastide-Hernandez*, 39 F.4th 1187, 1193–94 (9th Cir. 2022). Sarwar later received a corrected NTA and attended his hearing. Sarwar does not present a colorable argument that he was prejudiced by the initial, defective NTA.

2. We reject the government's argument that we lack jurisdiction to consider Sarwar's petition because he did not exhaust his challenge to the IJ's adverse credibility finding before the BIA. While we typically lack jurisdiction to consider issues that were not raised before the BIA, *see Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013), we do not apply the exhaustion doctrine in a formalistic manner against pro se petitioners, *Ren v. Holder*, 648 F.3d 1079, 1083 (9th Cir. 2011). Instead, we construe pro se filings liberally. *Id.* Sarwar's BIA filings challenged the IJ's finding that Sarwar was ineligible for asylum because Sarwar "failed to proffer and present credible evidence of past harm in Pakistan," there was a "lack of evidence to support [his] application," and he could "not

2

elaborate [his] statement correctly." He argued that he should be provided an opportunity to "elaborate [his] issue widely and with details." Liberally construing Sarwar's filings, we conclude that Sarwar placed the BIA on notice that he was contesting the IJ's credibility finding. Moreover, the BIA considered the merits of Sarwar's challenge to the adverse credibility determination, and claims addressed on the merits by the BIA are deemed exhausted. *See, e.g., Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008).

3.      We review adverse credibility determinations for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). We will not disturb the agency's finding that a petitioner is not credible unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Both the IJ and the BIA explicitly invoked the totality of the circumstances standard in their decisions and the IJ identified specific instances in the record for its adverse credibility determination. *See Shrestha*, 590 F.3d at 1042. The IJ evaluated Sarwar's demeanor, nonresponsive answers, and inconsistent statements. For example, the IJ reasonably relied on Sarwar's inconsistent statements about when police in Pakistan broke his arm. The IJ also relied on the fact that Sarwar could only describe what his political party stood for in vague terms and that it was implausible that Sarwar could support himself working construction in Brazil if he

3

had broken his arm a few months earlier. We hold that the IJ's adverse credibility determination is supported by substantial evidence.

4. Sarwar separately argues the BIA erred by affirming the IJ's decision to exclude the documentary evidence he offered. The documents were excluded for lack of foundation because Sarwar had not seen them prior to the hearing and could not authenticate them. He argues that this was prejudicial error because the documents could have corroborated his testimony. This overlooks that Sarwar bore the burden to establish a foundation for the admission of the documents and the IJ had discretion to determine whether the "balance of the evidence [was] sufficiently compelling to satisfy him that the documents [were] what [Sarwar] claim[ed] them to be." *Vatyan v. Mukasey*, 508 F.3d 1179, 1182, 1185 (9th Cir. 2007). Because the document from the attorney his brother hired in Pakistan bore a date that was inconsistent with Sarwar's own sworn testimony, the IJ had reason to doubt the veracity of the documents, and did not abuse his discretion by refusing to admit them without a witness who could authenticate them. *See Vatan*, 508 F.3d at 1182. Under these circumstances, we see no evidentiary error nor due process violation in the IJ's decision to exclude the records.

**PETITION DENIED.**

*Sarwar v. Garland*, No 18-71479

**BLOCK, Senior District Judge, dissenting:**

I agree that the BIA had jurisdiction. I further agree that Sarwar adequately exhausted his challenge to the IJ's adverse credibility determination.

I disagree, however, that his challenge lacks merit. The IJ relied principally on perceived inconsistencies in Sarwar's testimony regarding the date Pakistani police broke his arm. While his testimony is not a model of clarity, the inconsistencies are largely exaggerated.

Sarwar stated at his credible fear interview that his arm was broken at a political rally on February 11, 2014. He also described a "second beating" on August 14, 2014. He referred to both events at the merits hearing before the IJ, along with a third incident in December 2010. On direct examination, he testified that "because of these people I broke my arm" without referring to a specific date.

The IJ muddled the issue on cross-examination, asking Sarwar when he broke his arm. Sarwar responded, "It happened in 2010." The IJ then said that Sarwar had testified earlier that it was broken on August 14, 2014; Sarwar never so testified. Sarwar referred to "the first incident." He did not specify which incident he considered the first, but immediately clarified that "[t]he February one" was "the worst." On redirect, Sarwar described December 2010 as "a small event" and

stated unequivocally that his arm was broken in "February . . . when [he] was beaten the most."

Sarwar consistently testified that his arm was broken when Pakistani police beat him during a political rally. Considering his testimony in its entirety, I cannot agree that the IJ reasonably focused on some possible confusion as to the date of the incident as a basis for rejecting Sarwar's account.

The other grounds for the adverse credibility finding fare no better. The majority alludes to the IJ's statement that Sarwar described the political party he belonged to in "vague and general" terms. On the contrary, he knew that the December 2010 incident occurred at the party's "annual function"; that February 11 was the anniversary of the execution of prominent Kashmiri separatist Maqbool Bhat (whom he identified by name); and that August 14 was a "black day" for the separatist movement because it commemorated Pakistani independence.

The majority does not mention the IJ's reliance on Sarwar's statement at the border that he did not fear returning to his "home country or country of last residence," but this, too, was misplaced. Sarwar explained that he understood the question to refer to Brazil, not Pakistan. That explanation is far more sensible that the IJ's logic that a person "who had ample time to consider he story that he was going to present to the U.S. officials" completely forgot that he needed a story when he arrived at the border.

Finally, I cannot agree that the IJ properly excluded documents that would have corroborated Sarwar's testimony. Sarwar had no apparent means of authenticating the documents, which were assembled and sent after he fled Pakistan, but the ultimate test for the admission of documents in an immigration proceeding is "whether the evidence is probative and its admission is fundamentally fair." *Sanchez v. Holder*, 704 F.3d 1107, 1109 (9th Cir. 2012). The IJ suspected that the documents were created to match Sarwar's testimony but inconsistencies in the documents actually undermine that suspicion. Tellingly, the IJ had no qualms admitting—and presumably considering—documents detailing terrorist activities in Pakistan despite the complete lack of any connection to Sarwar. This imbalance in the IJ's approach to admissibility was, if anything, fundamentally unfair.

For these reasons, I respectfully dissent.