**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN MAURICIO CASTILLO,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 19-72745

Agency No.
A073-244-050

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 1, 2020
San Francisco, California

Filed November 18, 2020

Before:  J. Clifford Wallace and Michelle T. Friedland,
Circuit Judges, and Robert S. Lasnik,[*] District Judge.

Opinion by Judge Wallace

---

[*] The Honorable Robert S. Lasnik, United States District Judge for
the Western District of Washington, sitting by designation.

**SUMMARY**[**]

**Immigration**

Granting Juan Mauricio Castillo's petition for review of the Board of Immigration Appeals' denial of his application for protective status pursuant to the Convention Against Torture, and remanding, the panel held that the Board erred in giving reduced weight to the testimony of Dr. Thomas Boerman, a specialist in gang activity in Central America and governmental responses to gangs.

Castillo is a former gang member with tattoos who fears torture by gangs and/or Salvadoran officials because of his former gang memberships, his criminal conviction, and his later cooperation with law enforcement against La Mara Salvatrucha or MS-13. In a prior petition, the same panel concluded that the immigration judge and the Board improperly discounted Dr. Boerman's testimony.

The panel addressed two initial matters. First, the panel stated that the Board's rejection on remand of the panel's prior interpretation of the immigration judge's decision was ill-advised, explaining that its prior disposition was not an advisory opinion, but a conclusive decision not subject to disapproval or revision by another branch of the federal government. Second, the panel rejected the Board's reliance on *Vatyan v. Mukasey*, 508 F.3d 1179 (9th Cir. 2007), to support its conclusion that Dr. Boerman's testimony should be given reduced weight, because *Vatyan* addressed an IJ's

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

discretion to weigh the "credibility and probative force" of an authenticated document, whereas the issue in this case involved the testimony of an expert that the agency had ostensibly concluded was fully credible.

Even assuming the agency could accord reduced weight to Dr. Boerman's testimony and declaration, the panel disagreed with the Board's new justifications. First, the panel rejected the Board's reliance on alleged inconsistencies regarding Dr. Boerman's familiarity with Castillo's prison gang, where Dr. Boerman explicitly wrote in his declaration that his comments on Castillo's prison gang were based on facts provided by Castillo, and the Board did not cite any reason to doubt Castillo's testimony regarding rival gangs.

Second, the panel disagreed with the Board's conclusion that Dr. Boerman's testimony did not warrant full weight because he did not submit a copy of a video referenced in his testimony, where the video was neither the sole nor primary basis for his opinion, and the Board failed to explain why the absence of one video diminished the weight of Dr. Boerman's expert opinion, when his opinion had an independent factual basis.

Finally, the panel concluded that the Board's decision to give Dr. Boerman's opinion reduced weight, because it was not corroborated by other evidence in the record, was erroneous. The panel observed that the country report did provide support for Castillo's claim, and it noted that Dr. Boerman's expert testimony was itself evidence that could support Castillo's claim.

The panel remanded to the Board, directing it to give full weight to Dr. Boerman's testimony regarding the risk of

torture Castillo faces if removed to El Salvador. The panel explained that if the Board determines once again that Castillo is not entitled to relief, it must provide a reasoned explanation for why Dr. Boerman's testimony is not dispositive on the issue of probability of torture. The panel further explained that once it gives full weight to Dr. Boerman's testimony, the remaining issue for the Board is to determine whether Castillo has established the government acquiescence element of his CAT claim.

## COUNSEL

Michael Kagan (argued), Attorney; Edgar Cervantes, Law Student; Thomas & Mack Legal Clinic, University of Nevada, Las Vegas, Nevada; for Petitioner.

John F. Stanton (argued), Trial Attorney; Jessica E. Burns, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

WALLACE, Circuit Judge:

Juan Mauricio Castillo appeals from the Board of Immigration Appeals' (Board) denial of his application for protective status pursuant to the Convention Against Torture (CAT). Castillo is a native citizen of El Salvador. He snuck into the United States when he was 12 years old with the assistance of a family friend. He then murdered a 12-year-old girl when he was a teenager during a gang-related

shooting, and he was convicted in 1996 for first-degree murder with the use of a firearm during gang-related activity. Upon his parole from state prison, the Department of Homeland Security sought Castillo's removal. Castillo applied for withholding of removal and CAT status. The Immigration Judge (IJ) concluded that Castillo was not eligible for withholding of removal because his murder conviction was a bar as a particularly serious crime.

To support his application for CAT status, Castillo called an expert to testify on his behalf about gang activity in Central America and governmental responses to gangs. Ultimately, the IJ did not find the expert credible and discounted his testimony on the risks posed to Castillo because of his gang membership and murder conviction. The Board affirmed, but we remanded the petition to the Board. *Castillo v. Barr*, No. 17-72544, 765 F. App'x 256 (9th Cir. Mar. 28, 2019) (unpublished). We reasoned that the IJ's disagreement with portions of the expert's testimony ignored the record and relied on incorrect reasoning. *Id.* at 257. On remand, the Board re-affirmed the IJ's denial of Castillo's application for CAT protection for reasons like those we had rejected. Castillo again petitions for review of the denial of his application for CAT status.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Reviewing the Board's findings for substantial evidence, *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007), we grant the petition for review and remand.

I.

Castillo is a former gang member who has belonged to various violent gangs, including La Mara Salvatrucha, commonly known as MS-13. He joined MS-13 as a teenager, a few years after arriving in the United States. His

underlying murder conviction stemmed from his gang activity. Upon his incarceration, he joined a rival gang known as Mi Raza Unida (MRU) rather than MS-13. Castillo eventually tried to leave MRU, and he was debriefed by law enforcement about both MRU and MS-13. Both gangs responded by ordering a hit, or greenlight, on Castillo. The MS-13 hit applies in both the United States and El Salvador.

Castillo testified before the IJ that he feared for his life if removed to El Salvador because of his former gang memberships, his criminal conviction, and his later cooperation with law enforcement against MS-13. He also feared persecution from Salvadoran officials. Castillo contended he would be easily identified as a former gang member because of (1) his criminal record, (2) his deportation from the United States, and (3) his visible gang tattoos.

Castillo called Dr. Thomas Boerman as a specialist in Central American gang response strategies to testify on his behalf. Dr. Boerman has consulted on Central American gang issues for the U.S. Agency for International Development, the World Bank, and the United Nations High Commissioner for Refugees. Dr. Boerman opined in his testimony and declaration that Castillo faced a risk of torture or harassment from four different sources if he were deported to El Salvador.

The first is Castillo's status as a tattooed former gang member would make him a target for Salvadoran immigration officials, particularly because his United States conviction would have to be disclosed to the Salvadoran government, which could lead to his torture. The second is the ongoing risk from local police wherever he settles in El Salvador, which could lead to his imprisonment, torture, or

extrajudicial killing based on his former gang member status. The third is Castillo's status as a former MS-13 member who turned on his gang would make him a target for both MS-13 and other gangs in El Salvador, which would likely lead to his torture and death because of the "greenlight." The fourth is the alleged vigilante groups, which include Salvadoran government officials, engaged in "extermination squads" as a strategy to rid the country of gang members.

The IJ decided that Dr. Boerman's testimony should be given reduced weight and implied he was not a credible expert. The IJ held that Dr. Boerman's statements were not supported by the record, and his testimony proposed "linking together a series of suppositions and without 'establishing that each step in the hypothetical chain [was] more likely than not to happen.'" The IJ also discounted Dr. Boerman's testimony regarding the "extermination strategy" as "exaggerated," and the IJ observed that Dr. Boerman "was not able to consistently identify which of [Castillo's] tattoos were gang-related." The IJ concluded that Castillo could not establish that it was more likely than not that Salvadoran immigration officials would collude with police and torture him because the documentary evidence did not mention such collusion.

The Board held that the IJ did not commit clear error in concluding that the record was "devoid of any mention of immigration officials and police colluding to apprehend returning gang members." We disagreed in *Castillo*, 765 F. App'x at 257, and held that the IJ and the Board (collectively, the Agency) improperly discounted Dr. Boerman's testimony because the IJ relied on faulty reasoning and the Board failed to provide any other sufficient reason why his testimony and report should be

discounted.  We granted Castillo's petition and remanded to the Board.  *Id*. at 258.

Despite our direction to reconsider Dr. Boerman's testimony and its effect on Castillo's CAT claim, the Board has once again similarly discounted Dr. Boerman's testimony and did not consider the entire record.  The Board also rejected our interpretation of the IJ's decision, and it held that the IJ had not made an explicit credibility finding. The Board also continued to give Dr. Boerman's testimony "reduced weight."

The Board listed three reasons in support of its decision to discount Dr. Boerman's testimony.  The first are purported inconsistencies between Dr. Boerman's testimony and his written declaration with respect to his familiarity with Castillo's prison gang.  The second are Dr. Boerman's references to video evidence depicting Salvadoran immigration officials beating gang members at an airport despite not submitting the underlying video into evidence. The third is the dearth of corroborating evidence to support Dr. Boerman's testimony and declaration regarding the extermination strategy of the Salvadoran government and vigilante groups.  The Board concluded that Castillo failed to meet his burden because it held that Dr. Boerman's testimony was insufficient evidence, alone or in aggregate, to establish that Castillo's torture was more likely than not to occur.

Castillo argues two issues in his current petition for review.  The first is that the Board's holding that Dr. Boerman's testimony was not corroborated misconstrues the record.  The second is the Board did not properly aggregate Castillo's risks because it incorporated the IJ's chain-of-events analysis by reference.

II.

Under the Immigration and Nationality Act, even individuals convicted of aggravated felonies are eligible for CAT relief. *See Bromfield v. Mukasey*, 543 F.3d 1071, 1075 (9th Cir. 2008). To receive CAT status, Castillo must show that he would "more likely than not" be tortured if so removed. 8 C.F.R. §§ 208.16(c)(2), 208.17(a). Castillo must demonstrate "a chance greater than fifty percent that he will be tortured" if removed to El Salvador. *Hamoui v. Ashcroft*, 389 F.3d 821, 827 (9th Cir. 2004). Castillo must also establish that he would experience torture with the "acquiescence" of the Salvadoran government. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011).

The Board's factual findings are reviewed for substantial evidence. *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007). Substantial evidence means the Board's holding is supported by "reasonable, substantial, and probative evidence on the record." *Ornelas-Chavez v. Gonzalez*, 458 F.3d 1052, 1056 (9th Cir. 2006) (citation omitted). As such, we must uphold the Board's decision unless the record compels a contrary conclusion. Where the Board does not consider all the evidence before it, either by "misstating the record [or] failing to mention highly probative or potentially dispositive evidence," its decision cannot stand. *Cole*, 659 F.3d at 772. If the Board rejects expert testimony, it must state "in the record why the testimony was insufficient to establish the probability of torture." *Id.* (citation omitted). Improperly rejected expert testimony is a legal error and, thus, per se reversible. *See id.* at 773.

There are two initial matters. First, the Board's defiance of our previous decision in this matter and disagreement with our holding that the IJ did not find Dr. Boerman credible was ill-advised. Our prior disposition was not an advisory

opinion, but a conclusive decision not subject to disapproval or revision by another branch of the federal government. *Baez-Sanchez v. Barr*, 947 F.3d 1033, 1036 (7th Cir. 2020). "Once we reached [our] conclusion, both the Constitution and the statute required the Board to implement it." *Id*. Second, we reject the Board's reliance on *Vatyan v. Mukasey*, 508 F.3d 1179 (9th Cir. 2007), to support its conclusion that Dr. Boerman's testimony should be given reduced weight. *Vatyan* addressed an IJ's discretion to weigh the "credibility and probative force" of an authenticated document. *Id.* at 1185 n.4 (citation omitted). The issue here is the testimony of an expert that the Agency has ostensibly concluded is fully credible.

However, even assuming the Agency can accord reduced weight to Dr. Boerman's testimony and declaration, we disagree with the Board's new justifications. We first turn to the alleged inconsistencies regarding Dr. Boerman's familiarity with Castillo's prison gang. Dr. Boerman explicitly wrote in his declaration that his comments on Castillo's prison gang were based on facts provided by Castillo. The Board did not cite any reason to doubt Castillo's testimony that MRU and MS-13 are rival gangs. In the end, Dr. Boerman's testimony was not undermined by his reliance on facts about gang rivalries that have not been disputed. *See also Aguilar-Ramos v. Holder*, 594 F.3d 701, 706 n.7 (9th Cir. 2010) (observing that "[a]n expert is permitted to base his opinion on hearsay evidence and need not have personal knowledge of the facts underlying his opinion").

Second, we disagree with the Board's conclusion that Dr. Boerman's testimony did not warrant full weight because he did not submit the underlying evidence to the IJ. Our circuit has held that the underlying facts or data forming

the basis of an expert's opinion in an immigration proceeding "need not be admissible in evidence in order for the opinion or inference to be admitted." *Malkandi v. Holder*, 576 F.3d 906, 916 (9th Cir. 2009) (citation omitted). In addition, Dr. Boerman's testimony about a video of extrajudicial violence by Salvadoran immigration officials against gang members at an airport was neither the sole nor primary basis for his opinion that Castillo would be at risk from Salvadoran immigration officials. Dr. Boerman swore in his declaration that he was familiar with "numerous instances in which gang members and other tattooed individuals have been physically abused by [Salvadoran] immigration officials and/or turned over to police at the airport who subjected them to threats, beatings and/or torture." Accordingly, the Board failed to explain why the absence of one video diminished the weight of Dr. Boerman's expert opinion when it had an independent factual basis.

Finally, the Board's decision to give Dr. Boerman's opinion reduced weight because it was not corroborated by other evidence in the record was erroneous. The Board reasoned that Dr. Boerman's testimony about the Salvadoran government's alleged extermination strategy was not supported by other record evidence because the U.S. State Department's country report did not cite extrajudicial killings to a level that could justify such a characterization and said police are investigating misconduct. However, the country report also mentions extermination groups containing police officers. In any event, Dr. Boerman's expert testimony was itself evidence that could support Castillo's claim. *See Velasquez-Banegas v. Lynch*, 846 F.3d 258, 262 (7th Cir. 2017) (holding that an IJ erred in disregarding an expert's opinion on the basis that the expert did not cite data, reports, or examples as support for the

opinion, because the testimony was accepted by the IJ as truthful and was uncontradicted evidence). If an expert's opinion could only be relied upon if it were redundant with other evidence in the record, there would be no need for experts. The Board therefore erred in giving Dr. Boerman's testimony reduced weight.

We reject Castillo's second argument that the Agency erred by applying the chain-of-events analysis rather than aggregation of risks. The IJ discussed both analyses, and the Board assessed the aggregate risk.

### III.

We grant Castillo's petition and remand to the Board. Based on the record now before us, we further direct the Board to give full weight to Dr. Boerman's testimony regarding the risk of torture Castillo faces if removed to El Salvador. If the Board determines once again that Castillo is not entitled to relief, it must provide a reasoned explanation for why Dr. Boerman's testimony is not dispositive on the issue of probability of torture. Once it gives full weight to Dr. Boerman's testimony, the remaining issue for the Board is to determine whether Castillo has established the government acquiescence element of his CAT claim.

**GRANTED and REMANDED**.