**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 10 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GUILLERMO AVILA-ARIAS, | No.   20-71340 |
| Petitioner, | Agency No. A073-991-100 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 12, 2021
Pasadena, California

Before:  PAEZ and VANDYKE, Circuit Judges, and KORMAN,** District Judge.
Partial Dissent and Partial Concurrence by Judge VANDYKE

Petitioner Guillermo Avila-Arias ("Avila-Arias") petitions for review of the

Board of Immigration Appeals' ("BIA" or "Board") decision denying his

application for deferral of removal under the Convention Against Torture ("CAT").

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

We have jurisdiction under 8 U.S.C. § 1252. We grant the petition in part, deny it in part, and remand for further proceedings.

When "the BIA agrees with the IJ decision and also adds its own reasoning, we review the decision of the BIA and those parts of the IJ's decision upon which it relies." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1027–28 (9th Cir. 2019). We review factual findings for substantial evidence and "uphold the agency determination unless the evidence compels a contrary conclusion." *Id*. at 1028. Where the BIA does not consider all the evidence before it, either by "misstating the record [or] failing to mention highly probative or potentially dispositive evidence," its decision is legal error and cannot stand. *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011); *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020).

1.     Substantial evidence supports the BIA's determination that Avila-Arias's past experiences do not rise to the level of torture. The BIA reviewed the record evidence, incorporated the IJ's analysis, and added its own reasoning that the circumstances surrounding the death threats and attempted abduction Avila-Arias suffered did not amount to the "extreme and prolonged cruel and inhuman treatment" that define torture. *See* 8 C.F.R. § 1208.18(a). Avila-Arias does not identify record evidence that "compels a contrary conclusion," *Duran-Rodriguez*, 918 F.3d at 1028, nor does he demonstrate legal error in the BIA's examination of probative facts or interpretation of applicable law.

2

**2.** The BIA legally erred by misrepresenting record evidence and rejecting probative expert testimony without explanation in its determination that Avila-Arias could safely relocate within Mexico to avoid future harm.

Relevant considerations for a CAT claim include evidence of safe internal relocation, evidence of mass violations of human rights in the country of removal, and other pertinent country conditions. *Nuru v. Gonzales*, 404 F.3d 1207, 1217 (9th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(3)). Avila-Arias presented expert testimony from Dr. Alfonso Gonzales explaining why he could not relocate safely within Mexico. Dr. Gonzales described why La Union cartel viewed Avila-Arias to be a high priority target, that it is "highly likely" that the cartel would seek to "capture him, hurt him, most likely torture him," and that La Union holds immense influence in national criminal networks, which enables it to act effectively on its interests anywhere in the country.

The BIA, however, found that Avila-Arias could safely relocate within Mexico by mischaracterizing and erroneously dismissing Dr. Gonzales's expert testimony. The BIA selectively referred to an out-of-context portion of Dr. Gonzales's testimony when it asserted that "he could not recall where [La Union's] cells were located," to imply that Dr. Gonzales contradicted his opinion that La Union could pursue its interests nationwide. The Board's cherry-picking of that sentence fragment ignores the remainder of that *same sentence*, where Dr.

Gonzales explains how the nature and method by which the cartel operates enables it to violently act on its interests across the country. The Board also ignored several pages of testimony in which Dr. Gonzales explained the motive for and mechanics of how La Union pursues and tortures high priority targets like Avila-Arias throughout Mexico.

Thus, the Board's conclusion that Dr. Gonzales opined that "that La Union's purview was limited to a geographic area around Mexico City," mischaracterizes his testimony. We hold that the Board's reliance on this mischaracterization to dismiss Dr. Gonzales's opinion that Avila-Arias could not safely relocate within Mexico is legal error. *See Cole*, 659 F.3d at 772; *Castillo,* 980 F.3d at 1283 ("If the Board rejects expert testimony, it must state in the record why the testimony was insufficient to establish the probability of torture. Improperly rejected expert testimony is a legal error and, thus, per se reversible") (internal citation and quotation marks omitted). We grant Avila-Arias's petition for review on this ground, and remand to the BIA for further proceedings.

**PETITION FOR REVIEW GRANTED in part, DENIED in part, and REMANDED. The parties shall bear their own costs on appeal.**



*Avila-Arias v. Garland*, No. 20-71340

VANDYKE, Circuit Judge, dissenting in part and concurring in part.

I dissent from the majority's conclusion that the BIA's analysis of the expert witness's testimony was legally flawed.[1]  While the majority accuses the BIA of "misrepresenting record evidence" and "cherry-picking" in its analysis of Avila-Arias's CAT claim, it is the majority that stingily refuses to consider the BIA's rationale in its entirety and give it due deference.  Properly evaluated, the BIA's rationale more than meets our highly deferential substantial evidence review—especially for a CAT relief, which Congress intentionally designed to be especially difficult to qualify for.

### 1.    Substantial Evidence Supports the BIA's Relocation Conclusion.

Substantial evidence, not legal error, is the proper lens through which we should be reviewing the BIA's decision.  The majority attempts to construe the fact that the BIA reviewed the expert's testimony and found certain aspects of it more persuasive than others as constituting legal error.  It repeatedly claims the BIA "ignored" the parts of the expert's testimony that did not support the BIA's conclusion that Avila-Arias could safely relocate to avoid future torture.  But in making that conclusion, the BIA plainly acknowledged that the expert also "testified

---

[1] I concur with Section 1 of the majority's decision that substantial evidence supports the BIA's conclusion that Avila-Arias did not experience past torture.

1

that it is likely La Union would find [Avila-Arias] in Mexico" and *specifically cited the pages of the hearing transcript* that the majority claims were ignored. This distinguishes the BIA's decision here from *Cole v. Holder*, where the BIA did not "evidence[] in its opinion reasoned consideration of the potentially dispositive testimony of Cole's two experts." 659 F.3d 762, 772 (9th Cir. 2011). The BIA in this case evaluated all aspects of the expert's opinion and simply noted that some of the expert's testimony could be construed as conflicting with other parts of the same testimony. The Agency did what fact-finders routinely do: compared a witness's direct-examination testimony against his cross-examination testimony and concluded that the latter reduced the persuasiveness of the former. This is hardly irregular or constitutes "legal error," but is rather a reasonable weighing of the facts that is due deference under the substantial evidence standard applied to CAT analyses. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam).[2]

---

[2] Nor did the BIA give the expert's opinion less weight vis-à-vis other evidence, as the BIA did in *Castillo v. Barr*, 980 F.3d 1278, 1283–84 (9th Cir. 2020). The BIA here did not contrast the expert's testimony with other record testimony and discount or disregard all of his testimony, *id.* at 1284, but rather evaluated the entirety of the expert's written and verbal submissions and determined that some parts were more convincing than others given the expert's inability to provide any details on cross-examination in support of some of his earlier highly generalized and non-specific statements. The majority's real beef is with the BIA's weighing of the factual record, and thus substantial evidence—not legal error—is the standard of review it should be applying.

Substantial evidence supports the BIA's conclusion that Avila-Arias could safely relocate within Mexico to avoid future torture. The BIA's main analysis on this point focused on the fact that Avila-Arias successfully relocated in the past, and the La Union cartel only found him when Avila-Arias "mistakenly provided his address over the telephone." The majority does not engage with this discussion, and Avila-Arias's opening brief merely argues, counterintuitively, that there was no *guarantee* that Avila-Arias would not improvidently share his address again. But the BIA adopted the IJ's reasonable determination that it was more likely than not that Avila-Arias "would not report himself to the local criminal element" upon deportation. Because the BIA concluded it was "doubtful this criminal gang would find" Avila-Arias without that happening, "[t]he evidence does not establish that any step in this hypothetical chain of events is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture." *Medina-Rodriguez v. Barr*, 979 F.3d 738, 751 (9th Cir. 2020) (quoting *In re J-F-F-*, 23 I. & N. Dec. 912, 917–18 (A.G. 2006)); *compare Nuru v. Gonzales*, 404 F.3d 1207, 1219–20 (9th Cir. 2005) (determining that petitioner's evidence that his captors have "continued to look for him and that, in his absence, it has engaged in reprisals against his family" and evidence showing that the government actively looked for deserters like petitioner supported a probability of torture).

The BIA bolstered this conclusion by noting that among the evidence provided by Avila-Arias's expert were indications that La Union limited its activities to a particular geographic area in Mexico City. The expert affirmed "La Union … is active in … Mexico City, particularly the Tepito neighborhood," and when asked by the IJ if La Union had "active cells anywhere else within the country of Mexico," the expert responded "that [he] can specifically say right now, nothing's coming to mind …." The majority contends the BIA affirmatively mischaracterized other portions of the expert's testimony that explained how La Union can connect with other criminal cells to find Avila-Arias. But, first, the record is clear that, contrary to the majority's reasoning, La Union didn't find Avila-Arias in Tijuana *because of* its connections to other cartels or because "Avila-Arias [was] a high priority target;" it found him because he accidentally told them his address. The fact that Avila-Arias's expert vaguely testified that "the infrastructure is there for [La Union] to seek retribution against their enemies throughout Mexico," at most supports the conclusion that *if* La Union knew where Avila-Arias was, it could reach him. But that does not *compel* the conclusion that the cartel would have a greater than 50% chance of *finding him* without him again telling them his location.

Second, the expert's written testimony reveals that any discussion of La Union operating outside Mexico City was more of an afterthought. After repeatedly noting in the expert declaration that Avila-Arias would stand out *in Mexico City and*

4

*Tijuana* based on "his unique personal history," the expert opined Avila-Arias would be in danger from gangs "operating in Mexico City *and anywhere in Mexico for the matter*," (emphasis added), simply because "organized criminal groups … do try to maintain presence in outside territories outside their usual neighborhood." Such ipse dixit hardly compels the conclusion that there are active La Union members throughout Mexico, or that La Union could find someone anywhere in Mexico, thereby creating a high likelihood that Avila-Arias will be sought, located, and tortured upon his removal. Nor does it undermine the BIA's conclusion that La Union was not more than 50% likely to find Avila-Arias absent his own disclosure.

Avila-Arias's counsel explored this lack of clarity at the hearing and asked the expert whether a person fleeing La Union could avoid being attacked by moving to another part of Mexico. The expert began by prevaricating that he thought that "it is a matter of degree," and although he did say "[i]t's quite possible and probable that … La Union would go after someone," his initial conclusion was simply that "these organizations are not necessarily limited to the territorial boundaries that their names would suggest." Only after Avila-Arias's counsel continued to press him did the expert make bolder claims about Avila-Arias's likelihood of torture outside of Mexico City, graduating from "quite possible" to "likely" and eventually to "highly likely." Ultimately, the expert's opinion that Avila-Arias would face torture vacillated from focusing specifically on a high risk within Mexico City to making

5

broad, vague claims about Avila-Arias's risk outside of that area.[3] Taking the opinion in its entirety, the BIA weighed the various statements from the expert against each other and found the more specific information, relating to Avila-Arias's threat of torture in a particular area of Mexico, more likely than the expert's general and unsubstantiated claims about the threat of torture country-wide.[4]

In light of the entire record, the BIA reasoned that although "other plausible views of the evidence exist" that differed from the IJ's conclusion, the BIA

---

[3] While an IJ "may receive in evidence any oral or written statement that is material and relevant to any issue in the case [from] … any other person during a[] … hearing," 8 C.F.R. § 1240.7(a), the IJ in this case "was not required to adopt as true all of the facts on which [the expert] based his opinion, nor was the IJ required to find that [the expert's] unrebutted testimony made it more likely than not that [petitioner] would be tortured upon returning to" his country of removal. *Aguilar-Ramos v. Holder*, 594 F.3d 701, 706 n.7 (9th Cir. 2010). The majority here accepts the expert's ad-libbing on the certainty of Avila-Arias's torture and his increasingly unfounded claims about La Union's reach, but neither "the IJ [or the BIA] [were] … required to accede to [this] expert opinion[]." *Acevedo Granados v. Garland*, 992 F.3d 755, 763 (9th Cir. 2021). And both the IJ and BIA considered and reasonably rejected the expert's conclusion that Avila-Arias was more likely than not to be tortured upon removal to any part of Mexico. Under our substantial evidence review, the *entirety* of the evidence—including the *entirety* of Avila-Arias's expert's waffling and escalating testimony—does not compel a different determination.

[4] Moreover, the record documentation provided by Avila-Arias explains that La Union "primarily operates … in the district of Cuauhtémoc" within Mexico City. The expert's testimony did not contradict this fact. The expert's entire premise was that La Union could connect with *other cartels* outside of Mexico City and use that "infrastructure … to seek retribution." Thus, the BIA did not "mischaracterize his testimony" as the majority claims, when the BIA observed that "La Union's purview was limited to … [the] Mexico City" area.

determined it could not overturn a factual finding on that basis. *See Rodriguez v. Holder*, 683 F.3d 1164, 1170–71 (9th Cir. 2012). Our court would do well to emulate the BIA in this respect, as we too "are not free to look anew at the testimony and then measure the soundness of the agency's decision by what we would have found. Nor does evidence compel the opposite conclusion just because it would also support a different result." *Donchev v. Mukasey,* 553 F.3d 1206, 1213 (9th Cir. 2009). Because the record evidence in this case is mixed, it does not compel the conclusion that (a) Avila-Arias will share his new location with La Union or that (b) La Union operates extensively across Mexico such that it could find Avila-Arias without him again sharing his location.

> **2. This Case Demonstrates the Need to Faithfully Apply the CAT Standard.**

This case well illustrates why the CAT standard is, by design, so difficult to surmount, and illuminates why it is particularly problematic when we, as judges, inappropriately step beyond our deferential standard of review. CAT is the hardest type of relief from removal to qualify for, and for good reason. When, as in this case, an applicant is only eligible to apply for CAT deferral, the reason is often because the applicant's past dangerous and unsavory behavior bars him from any other type of asylum—i.e., those types of relief that are easier to qualify for. Here, Avila-Arias's case focuses only on deferral of removal under CAT—with its exceedingly high bar for relief—because he falls into that class of petitioners so

7

concerning that the government would otherwise remove them *unless* they are *very* likely to be tortured or killed upon return to his country. By refusing to properly apply the CAT standard and second-guessing the BIA, two unaccountable judges are tilting our immigration system toward admitting demonstrably dangerous candidates. While I guess my colleagues don't expect this person to end up being *their* neighbor, he could end up being *some American's* neighbor, compliments of our court.

What kind of neighbor will he be? In May 2001, Avila-Arias was convicted of conspiracy to commit battery for fracturing a victim's skull with a golf club. In October 2001, he was convicted of conspiracy to commit grand larceny. And in January 2013, he was convicted of strangling his then-partner, the mother of his children. After being removed from this country "[b]etween five and eight times," Avila-Arias appeared before the IJ, who determined that the battery and strangulation convictions constituted particularly serious crimes—making him ineligible for withholding of removal and withholding of removal under CAT. Avila-Arias does not challenge that conclusion before our court.

Because Avila-Arias consistently "attempt[ed] to downplay the extent of his criminal history," the IJ found him entirely dishonest because "the nature of [Avila-Arias's] testimony impact[ed] his credibility to such an extent that the court [found] that his entire testimony [was] incredible." The IJ denied all relief under CAT on

8

the ground that he could put no weight on Avila-Arias's incredible testimony that he had been a victim of threats or harm in Mexico. The IJ alternatively held that, even if he had been credible, Avila-Arias did not demonstrate past torture or that he was more likely than not to be tortured upon removal. The BIA affirmed the IJ on an alternate ground, presenting our panel with those issues on appeal that the majority addresses. But by misreading the BIA's decision and lowering the standard for protection under CAT, the majority incorrectly granted relief. Because substantial evidence supports the BIA's determination that Avila-Arias did not demonstrate he was more likely than not to share his location with La Union in the future and consequentially be tortured, and I would deny the petition in its entirety.

I respectfully dissent.