**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| Efren Sanchez Duran,<br><br>Petitioner,<br><br>v.<br><br>Merrick B. Garland, U.S. Attorney General,<br><br>Respondent. | No. 22-254<br><br>Agency No.    A092-328-230<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 14, 2023[**]
Pasadena, California

Before: PAEZ, CHRISTEN, and MILLER, Circuit Judges.

Efren Sanchez Duran petitions for review of a decision of the Board of

Immigration Appeals dismissing his appeal of an immigration judge's denial of

his application for deferral of removal under the Convention Against Torture

(CAT). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

We review the agency's factual findings for substantial evidence. *Lalayan v. Garland*, 4 F.4th 822, 826 (9th Cir. 2021). Under that standard, findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Ren v. Holder*, 648 F.3d 1079, 1083 (9th Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(B)).

1. Substantial evidence supports the Board's determination that Sanchez Duran did not show that it is more likely than not that he would be tortured in Mexico. *See* 8 C.F.R. §§ 208.17(a), 1208.18(a)(1). Sanchez Duran claims that, after he came out as gay (in approximately 2000), his brother Enrique instructed his brother Antonio to kill him. But Sanchez Duran remained in contact with both his brothers until at least 2019, and there is no indication that he was ever harmed. In addition, Sanchez Duran claims that he was harassed by the Mexican police on account of being gay and that he was physically assaulted by officers on several occasions. But none of that harm amounted to torture. *See* 8 C.F.R. § 1208.18(a)(2).

Sanchez Duran also fears that his brothers will kill him in retaliation for having served as an informant. Sanchez Duran claims that Antonio knows that he cooperated with law enforcement, and that, since Antonio discovered this, he has been extorting Sanchez Duran for money. Sanchez Duran also claims that Enrique, whom he described as a powerful member of the Mexican Mafia who regularly bribes the police, threatened to kill him if he ever cooperated with the police. But Sanchez Duran also stated that Enrique has not harmed him because

2

Enrique does not know about his activities as an informant. While we do not suggest that Sanchez Duran has no reason to fear his brothers, substantial evidence supports the Board's finding that Sanchez Duran's work with American law enforcement, which ended in 2016, "was too attenuated to give rise to a present likelihood of torture."

In sum, this record does not compel the conclusion that Sanchez Duran is more likely than not to be tortured by or with the consent or acquiescence of public officials if he returns to Mexico.

2. We reject Sanchez Duran's contention that the agency failed to consider all the documentary evidence in the record. "Where the Board does not consider all the evidence before it, either by 'misstating the record [or] failing to mention highly probative or potentially dispositive evidence,' its decision cannot stand." *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020) (alteration in original) (quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)). Sanchez Duran argues that because the immigration judge referred to "the most recent edition of the Human Rights Report for Mexico" and its description of "conditions in prisons . . . in 2017," the immigration judge must have relied on material that was outside the record, as the Human Rights Report in the record was the 2016 Report. But the language about prison conditions in the immigration judge's decision is also contained in the 2016 Report, and thus in the record. The Board took note of this and, having reviewed the record, upheld the immigration judge's decision. *See Hernandez v. Garland*, 52 F.4th 757, 771

(9th Cir. 2022) ("In reviewing the Board's order, we apply a 'presumption that the [Board] did review the record.'" (quoting *Fernandez v. Gonzales*, 439 F.3d 592, 603 (9th Cir. 2006))). Thus, regardless of what the immigration judge wrote, the Board's decision was not based on a misstatement of the record.

Moreover, Sanchez Duran cites no "highly probative or potentially dispositive evidence" that the Board failed to discuss. *Cole*, 659 F.3d at 772. Sanchez Duran mentions an article describing corruption within Mexican law enforcement and the murder of an informant, and he also notes that, according to the 2016 Human Rights Report for Mexico, "[o]rganized criminal groups . . . were implicated in numerous killings, often acting with impunity and at times in league with corrupt state, local, and security officials." But none of this demonstrates the "*particularized threat* of torture" that the CAT requires. *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam) (quoting *Lanza v. Ashcroft*, 389 F.3d 917, 936 (9th Cir. 2004)). The Board thus had no obligation to discuss it and properly found that Sanchez Duran failed to establish a particularized risk of torture in Mexico. *See Villegas Sanchez v. Garland*, 990 F.3d 1173, 1183 (9th Cir. 2021); *Cole*, 659 F.3d at 771–72.

The motion for a stay of removal (Dkt. No. 2) is denied.

**PETITION DENIED.**