**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SERGIO CRUZ BARRERA, Petitioner, v. PAMELA BONDI, Attorney General, Respondent. | No. 23-2968 Agency No. A088-890-394 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 4, 2025
Portland, Oregon

Before: BYBEE and FORREST, Circuit Judges, and RODRIGUEZ, District Judge.[**]
Partial Concurrence and Partial Dissent by Judge RODRIGUEZ.

Petitioner Sergio Cruz Barrera is a native and citizen of El Salvador. He petitions for review of the Board of Immigration Appeals' (BIA) order affirming an Immigration Judge's denial of his application for statutory withholding of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Xavier Rodriguez, United States District Judge for the Western District of Texas, sitting by designation.

removal and withholding of removal under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition in part, deny it in part, and remand for further proceedings consistent with this disposition.

"Where the BIA writes its own decision, as it did here, we review the BIA's decision, except to the extent it expressly adopts the IJ's decision." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1075–76 (9th Cir. 2020) (citation omitted). We review factual findings for substantial evidence and legal conclusions de novo. *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). Under the substantial evidence standard, we uphold the BIA's determination "unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019).

1. To be eligible for statutory withholding of removal, Cruz Barrera must "show that either the government or persons or organizations which the government is unable or unwilling to control are responsible for the persecution." *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004) (internal quotation marks, alterations, and citation omitted).[1] This requirement relates to whether "the

---

[1]Cruz Barrera proposes that we review the agency's government-control holding de novo. The case on which Cruz Barrera relies, *Kaur v. Wilkinson*, 986 F.3d 1216, 1221 (9th Cir. 2021), is part of an acknowledged intra-circuit split on the standard of review for level-of-harm findings. *See Lapadat v. Bondi*, 128 F.4th 1047, 1055–56 (9th Cir. 2025). Even since *Kaur* was decided, we have consistently reviewed government-control findings for substantial evidence, *e.g. Diaz v. Bondi*, 129 F.4th 546, 554–55 (9th Cir. 2025), and continue to do so here.

government both could *and* would provide protection." *J.R. v. Barr*, 975 F.3d 778, 782 (9th Cir. 2020) (internal quotation marks and citation omitted).

The BIA emphasized the Salvadoran government's attempt to prosecute Antonio Castro, the person involved in threatening and attacking Cruz Barrera, as evidence that the government was willing to protect Cruz Barrera. While government responsiveness to reports of violence can undermine a petitioner's claim that the government is unwilling to control private persecutors, *see, e.g.*, *Truong v. Holder*, 613 F.3d 938, 941 (9th Cir. 2010) (per curiam), such responsiveness is not conclusive as to the government's ability to protect a person suffering persecution, *see J.R.*, 975 F.3d at 782. "Willingness to control persecutors notwithstanding, authorities may nevertheless be powerless to stop them because of a lack of resources or because of the character or pervasiveness of the persecution." *Id.* (internal quotation marks, alterations, and citation omitted); *see also Diaz v. Bondi*, 129 F.4th 546, 555–56 (9th Cir. 2025). The agency overlooked important evidence that the Salvadoran government, even if willing to help Cruz Barrera, may be unable to control his feared persecutors.

Begin with past persecution, which would establish a presumption of future persecution. *See Aden v. Wilkinson*, 989 F.3d 1073, 1086 (9th Cir. 2021). The BIA failed to acknowledge that the reason the government's effort to prosecute Antonio Castro failed—a "lack of evidence"—may have been caused by the government's

inability to control Cruz Barrera's persecutors. The two witnesses—Cruz Barrera and Ernesto Martinez—were unavailable to testify because they fled the country under threat from the Castro family. *Cf. J.R*, 975 F.3d at 783 (holding the government was unwilling to protect the petitioner, in part, because it withdrew protection after he testified).

As to future persecution, the IJ drew incomplete inferences from certain pieces of evidence while failing to mention others.[2] First, the IJ noted that Cruz Barrera's brother successfully argued self-defense after killing Antonio Castro. While that may be evidence that the judiciary is not corrupt or biased against Cruz Barrera's family, it is not evidence that the government is able to control the Castro family in its consistent targeting of the Cruz Barrera family.

In addition, although the IJ acknowledged that Cruz Barrera's "family has received threats from the [Castro] family," including threats that were "specific to persons in the United States who would return," the IJ did not mention those threats in its future persecution analysis.[3] Nor did the IJ acknowledge that Cruz

---

[2]Although the BIA only analyzed past persecution, we look to the IJ's analysis where the BIA implicitly incorporated the IJ's future persecution findings by reference. *See Diaz-Reynoso*, 968 F.3d 1075–76.

[3]The dissent argues that Cruz Barrera failed to prove that the Salvadoran government was unwilling or unable to protect him because he and his family did not report the threats they received. But the record indicates that Cruz Barrera reported that his "parents went to the police to report the threats but the police did nothing." And in any event, the agency did not deny Cruz Barrera's application on that ground. *See Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) ("We 'cannot

Barrera's family has been forced to relocate and hire private security to protect themselves. This evidence suggests that the situation is out of the government's control and Cruz Barrera would be forced, like his family, to resort to self-help to protect himself from his feared persecutors.

Although the agency need not "individually identify and discuss every piece of evidence in the record," a decision that fails "'to mention highly probative or potentially dispositive evidence' . . . cannot stand." *Hernandez v. Garland*, 52 F.4th 757, 770–71 (9th Cir. 2022) (quoting *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020)). Accordingly, we remand for the agency to fully evaluate the Salvadoran government's ability to control Cruz Barrera's feared persecutors.

2. On remand, the agency should also specifically address Dr. Boerman's expert declaration. Although the agency is not required to address expert testimony unless it is "highly probative or potentially dispositive," *Hernandez*, 52 F.4th at 770–71 (internal quotation marks, alteration, and citation omitted), the IJ did not, as it stated it would, clarify the weight it afforded Dr. Boerman's declaration in reaching its conclusion.[4]

3. Finally, we deny the petition as to Cruz Barrera's CAT claim. To be

---

affirm the BIA on a ground upon which it did not rely.'" (quoting *Navas v. I.N.S.*, 217 F.3d 646, 658 n.16 (9th Cir. 2000))).

[4]Although the dissent notes that Cruz Barrera's counsel "believe[d]" the declaration was admitted with limited weight, the dissent does not dispute that the IJ never actually resolved the open evidentiary issue.

eligible for CAT relief, Cruz Barrera must prove it is more likely than not that a public official will acquiesce in his torture. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017). Because Cruz Barrera has not presented evidence of corruption, government involvement, or anything more than government ineffectiveness at curbing violence, we deny the petition as to his CAT claim. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it." (alteration and citation omitted)); *Barajas-Romero*, 846 F.3d at 363 ("Police ineffectiveness is not enough to establish an entitlement to relief 'absent evidence of corruption or other inability or unwillingness to oppose criminal organizations.'" (quoting *Garcia-Milian*, 755 F.3d at 1034)).

**PETITION GRANTED in part, DENIED in part, and REMANDED.** The Government shall bear the costs on appeal.



**Rodriguez, J., concurring in part and dissenting in part.**

I concur with the majority's denial of the petition as to protection under the Convention Against Torture, but respectfully dissent from the majority's remand as to withholding of removal. In my view, it rests on a faulty theory of when a foreign government is *unable* to control private persecutors and remand would be futile.

The majority rightly declines to find that the evidence does not compel a contrary conclusion. Instead, it remands Cruz Barrera's withholding of removal claim because it concludes that the agency failed "to mention highly probative or potentially dispositive evidence." *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011).

I do not believe any of the record evidence meets this standard. Start with past persecution. The majority theorizes that the reason the El Salvadoran government's effort to prosecute Antonio Castro failed *may* have been caused by that government's inability to control Cruz Barrera's persecutors, given that the two witnesses—Cruz Barrera and Ernesto Martinez—were unable to testify because they fled the country under threat from the Castro family. But the notion that a certain piece of evidence "may" establish a finding defeats the assertion that this evidence is either highly probative or potentially dispositive. And the record is devoid of evidence that either Cruz Barrera or Ernesto Martinez reported the threats to the El Salvadoran authorities or requested witness protection. True, "reporting persecution to government authorities is not essential to demonstrating that the government is

unable or unwilling to protect . . . from private actors." *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010), *overruled on other grounds by Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1070 (9th Cir. 2017). But even if these threats fall within the scope of persecution, nothing suggests that reporting the threats would have been "futile" or placed them in "greater danger." *Id.* The El Salvadoran government cannot be unable to control what it is not aware of. *Cf. Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013) (holding that the "inability to control persecutors is not demonstrated simply because the police ultimately were unable to solve a crime or arrest the perpetrators, where the asylum applicant failed to provide the police with sufficiently specific information to permit an investigation or an arrest").

The case that the majority relies on, *J.R. v. Barr*, 975 F.3d 778 (9th Cir. 2020), makes this clear. There, we held that the El Salvadoran government was unwilling to protect the petitioner because it withdrew witness protection after he testified against gang members. *Id.* at 783. The petitioner had his fingers cut off, was shot seven times, his son was murdered at home, and he received death threats due to his testimony, after which the El Salvadoran trial judge told him to flee. *Id.* at 780. The El Salvadoran government was clearly aware of the need for protection but failed to provide it, even though the petitioner remained in El Salvador. Here, nothing suggests that the El Salvadoran government was aware of a need to protect Cruz Barrera or Ernesto Martinez, or that it rejected a request to do so.

2                                                                    23-2968

A government's ability to protect against persecution in the witness protection context also depends on cooperation from those who seek protection. Cruz Barrera quickly fled El Salvador after his brutal attack.[1] I do not see how one can flee on their own accord, even if for good reason, but turn around and claim the government was unable to protect them. The majority's position implies that foreign governments must proactively provide immediate witness protection without any knowledge of threats on their life.

As to future persecution, the majority contends that the IJ ignored two pieces of evidence that suggest the situation in El Salvador is "out of the government's control" and that Cruz Barrera would be forced to resort to self-help to protect himself from feared persecutors. First, the majority points to the threats against Cruz Barrera's family from the Castro family, including threats that were "specific to persons in the United States who would return." Second, it highlights that Cruz Barrera's family were forced to relocate and hire private security to protect themselves.

As the majority acknowledges, the IJ *did* mention the threats from the Castro family. I suspect on remand the IJ will just repeat its factual finding in its "future persecution analysis" and state it does not move the needle. This is because being

---

[1] The record is silent as to when Ernesto Martinez fled, but it was Cruz Barrea's burden to put on evidence to support his claim. 8 C.F.R. § 1208.16(b).

subject to private threats alone is untethered to whether the El Salvadoran government is unable to protect against them. I take the majority's theory to be that the El Salvadoran government's failure to act on these threats may show an inability to protect against private persecution. But the IJ did not find that the specific threats were communicated to the El Salvadoran police. Even assuming they were notified—a point on which the record is vague ("My parents had gone to tell the police [referencing "any" threats] but [t]he police hasn't done anything") ("I believe that his family threatened my parents. My parents went to the police to report the threats but the police did nothing"),—nothing suggests that the El Salvadoran police had enough information to investigate, much less make an arrest. Our cases do not require a foreign government to "prevent *all* risk of harm." *Hussain v. Rosen*, 985 F.3d 634, 648 (9th Cir. 2021) (emphasis in original). I would hesitate to impose investigative and prosecutorial requirements on foreign governments without clear-cut information that they are *able* to act appropriately.

Moreover, when crime occurred—Cruz Barrera's heinous rape and his brother's shooting of Antonio Castro a few years later—the Salvadoran police *did* investigate, arrest, and prosecute. *See Hussain*, 985 F.3d at 648 (holding that "a country's government is not 'unable or unwilling' to control violent nonstate actors when it demonstrates efforts to subdue said groups"). The majority's position disregards the El Salvadoran authorities' demonstrated ability to control Cruz

Barrera's persecutors in this case in favor of an unworkable standard to preemptively deter crime.

Relocation and hiring private security itself is also no evidence of an inability to protect against persecution, especially where, as here, the relocation was allegedly due to threats that the record does not indicate were reported to the El Salvadoran authorities. While the majority states Cruz Barrera's family was *forced* to move, this word does not appear in the agency's findings. Instead, the record reveals they moved due to unspecified threats from unknown individuals. This cannot be enough to show the El Salvadoran government is unable to protect against persecution, and instead demonstrates a volitional decision to upgrade their living situation.

I also disagree with the majority's directive to the agency to "clarify the weight it afforded Dr. Boerman's declaration in reaching its conclusion." The majority does not point to any probative evidence in Dr. Boerman's declaration, and Cruz Barrera's counsel before the IJ *conceded* that Dr. Boerman's declaration was admitted with limited weight. Given this concession, the IJ need not have specifically addressed it.