NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNY CAROLINA AGUILAR-VELASQUEZ, <br><br> Petitioner, <br><br> v. <br><br> TODD BLANCHE, Acting Attorney General, <br><br> Respondent. | No. 23-61 <br><br> Agency No. <br> A206-731-646 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 16, 2026**
Portland, Oregon

Before: OWENS, VANDYKE, and SUNG, Circuit Judges.
Concurrence by Judge VANDYKE.

Petitioner Jenny Carolina Aguilar-Velasquez petitions for review of the

Board of Immigration Appeals' ("BIA's") order affirming the Immigration Judge's

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

("IJ's") order denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). "Where the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012) (quotation marks omitted). "We review factual findings for substantial evidence and legal questions de novo." *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (quoting *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020)). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1.    We review the agency's determination that Petitioner did not establish past persecution for substantial evidence. *Urias-Orellana v. Bondi*, 607 U.S. __, 2026 WL 598435, at *5–6 (Mar. 4, 2026). We conclude that substantial evidence supports the agency's determination.

Petitioner contends that the record compels the conclusion that she suffered past persecution because (1) gang members forced Petitioner to lay on the ground at gunpoint; (2) Petitioner saw both her husband and his brother be taken by gang members, and both were killed soon after; (3) the same gang later killed her other brother-in-law; (4) the gang made threats against her husband's family (the Guifarro-Figueroa family); and (5) after her husband's family had moved away from the area and Petitioner went to live with her mother, gang members drove by

Petitioner's mother's house and later asked her younger brother where she had gone.

Although Petitioner was only 17 at the time, the fact that she was forced to lay on the ground at gunpoint does not establish past persecution. *See Sharma v. Garland*, 9 F.4th 1052, 1062 (9th Cir. 2021) (collecting cases where brief detentions without physical harm did not compel finding of past persecution).

As to the actions taken against members of the Guifarro-Figueroa family, "harm to a petitioner's close relatives, friends, or associates may contribute to a successful showing of past persecution" where that harm is "part of a pattern of persecution closely tied to [the petitioner her]self." *Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009) (cleaned up). Here, however, the record does not compel the conclusion that the deaths of Petitioner's husband and his brothers, or the threats against the Guifarro-Figueroa family, were part of a pattern of persecution closely tied to Petitioner. The gang never physically harmed Petitioner, despite the fact that she was present when her husband was abducted and again when her brother-in-law was abducted. Nor did the gang ever specifically threaten Petitioner, although it threatened the Guifarro-Figueroa family generally. Additionally, the gang did not bother other members of the Guifarro-Figueroa family while they sold off their belongings and prepared to leave their farm, because, according to Petitioner, the gang was "just interested in the land."

In these circumstances, the record does not compel the conclusion that the gang's actions against the Guifarro-Figueroa family were closely tied to Petitioner.

Finally, even considered together with the other facts in the record, the fact that gang members drove by Petitioner's mother's house while Petitioner was staying there, and asked Petitioner's brother where she was, does not compel the conclusion that the gang intended to harm her.

In sum, considering "the cumulative effect of all the incidents that [the] Petitioner has suffered," we conclude that those incidents do not compel a finding of past persecution. *Sharma*, 9 F.4th at 1061 (quoting *Gormley v. Ashcroft*, 364 F.3d 1172, 1176–77 (9th Cir. 2004)).

2.      Where there is no past persecution, a petitioner may still establish eligibility for asylum based on a well-founded fear of future persecution. *See Hussain v. Rosen*, 985 F.3d 634, 645–46 (9th Cir. 2021). In such cases, the petitioner bears the burden to show a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1)–(2). As discussed above, Petitioner was never personally harmed or threatened by the gang. She resided safely in Honduras for two years after she left the Guifarro-Figueroa farm—first with her mother in Ocotillo and then with her grandfather in a different town. Her mother and children remained unharmed in Honduras for an additional five years after Petitioner left for the United States. In these circumstances, substantial evidence supports the agency's

4                                                          23-61

determination that Petitioner does not have a well-founded fear of future persecution.

3.    To be eligible for statutory withholding of removal in the absence of past persecution, Petitioner must show that it is more likely than not that she will be persecuted if she returns to Honduras. *See* 8 C.F.R. § 1208.16(b). Because petitioner has failed to show that she has a well-founded fear of future persecution, she cannot show that future persecution is more likely than not. *See Wakkary*, 558 F.3d at 1065 (observing that statutory withholding has a higher standard of proof for future persecution than does asylum). Thus, Petitioner's claim for withholding of removal fails for the same reasons that her asylum claim fails.

4.    Petitioner also contends that the agency erred in denying her relief under CAT. She asserts that she is likely to face torture if she returns to Honduras and that the Honduran government is likely to acquiesce in such torture.

We review for substantial evidence the agency's determination that the government would not acquiesce in future torture. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014). Petitioner argues that the agency's determination is not supported by substantial evidence because the police did not investigate the death of her husband and because country conditions evidence establishes that Honduran police are corrupt and ineffective. However, "[e]vidence that the police were aware of a particular crime, but failed to bring the

perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime." *Id.* Nor does evidence that the government has generally been ineffective in rooting out corruption and preventing crime compel a finding that the government would acquiesce in future torture. *See id.*; *B.R. v. Garland*, 26 F.4th 827, 845 (9th Cir. 2022). Because the record here does not compel the conclusion that the Honduran government would acquiesce in Petitioner's torture, we uphold the agency's determination that Petitioner is not eligible for relief under CAT.

5. Petitioner also contends that the agency's analysis was flawed because it failed to address the expert testimony of Dr. James Phillips, who opined that Petitioner is likely to be tortured or killed if she returns to Honduras and that the Honduran government would be unwilling or unable to prevent it. However, the BIA is "under no obligation to discuss [a] report [that is] neither 'highly probative [n]or potentially dispositive.'" *Hernandez v. Garland*, 52 F.4th 757, 771 (9th Cir. 2022) (quoting *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020)).

Regarding future harm, Phillips based his opinion on the facts that, (1) because the gang asked about Petitioner's whereabouts, it was "reasonable for [Petitioner] to assume that [the gang was] looking for her to threaten or kill her," and (2) Petitioner's statement in her declaration that she stood to inherit the Guifarro-Figueroa land. But the agency considered the gang's inquiries into Petitioner's whereabouts, and the fact that it was "reasonable to assume" the gang

6                                                                                    23-61

was planning to threaten or kill her does not compel the conclusion that the gang intended to harm her in the past or intends to harm her in the future. Additionally, the agency found Petitioner not credible as to her testimony that she would inherit the Guifarro-Figueroa land, and Petitioner does not appeal that finding. As to Phillips's opinion that the government would be "unable or unwilling to offer protection or assistance to individuals in situations similar to those of [Petitioner]" that opinion was based on general country conditions evidence about the Honduran government's ineffectiveness in rooting out corruption and addressing gang violence, which the BIA did consider. In these circumstances, Phillips's report was neither highly probative nor potentially dispositive, so the BIA did not err by failing to address it.

**PETITION DENIED.**[1]

---

[1]    The stay of removal will dissolve upon the issuance of the mandate.

FILED

APR 17 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Aguilar-Velasquez v. Bondi*, No. 23-61
VANDYKE, Circuit Judge, concurring:

For the reasons stated in *Rojas-Espinoza v. Bondi*, 167 F.4th 1069, 1077–78 (9th Cir. 2026) (VanDyke, J., dissenting from the grant of rehearing en banc)—and because Petitioner showed no likelihood of success on the merits—I would not leave the temporary stay of removal in place.

1